(Nos. 15117-15149.—Reversed and remanded.)

THE PEOPLE *ex rel.* Roy W. Bracher, County Collector, Appellant, *vs.* E. L. MILLARD *et al.* Appellees.—THE PEOPLE *ex rel.* Roy W. Bracher, Appellee, *vs.* GEORGE D. McLAUGHLIN, Appellant.

*Opinion filed April 18, 1923.*

1. TAXES—*what constitutes equalization of assessments.* Equalization of assessments is the adjustment of graduated values of property as between different taxing districts, so that the whole tax imposed upon each taxing district shall be justly proportioned to the value of the taxable property within its limits, in order that one taxing district may not pay a higher tax in proportion to the value of taxable property than another.

2. SAME—*courts cannot interfere with valuation of property except for fraud—presumption.* Courts have no power to fix the value of property for taxation and the valuation fixed by the taxing authorities is not open to review except for fraud, but the presumption is that the tax is just and that the officers levying it have discharged their duties, and the burden is on the objector to prove fraud in the valuation by clear and explicit testimony.

3. SAME—*when excessive valuation is evidence of fraud.* The mere fact of over-valuation will not establish fraud, but if it be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive such facts are evidence of fraud.

4. SAME—*what may be considered in fixing valuation.* The assessor and the board of review in fixing the valuation of property may take into consideration their own knowledge and information acquired by their investigations and may compare the value of the property with that of other property of the same character.

5. SAME—*what may be considered in determining whether increase in assessed value is excessive.* In determining whether an increase in the assessed value of property in a particular taxing district is so excessive as to be fraudulent, where the assessor testifies that he placed the valuation for assessment purposes at fifty per cent of his estimate of the actual value and the assistant supervisor of assessments testifies that he told all assessors in the county to put the valuation at fifty per cent, it may be assumed that this was done, and the actual values estimated in the different taxing districts may be estimated accordingly.

6. SAME—*amendment of 1921 to paragraph 6 of section 25 of Counties act is valid.* The amendment of 1921 to paragraph 6 of section 25 of the Counties act, authorizing the county board to levy an additional tax for State aid roads, is not unconstitutional. (*People* v. *New York Central Railroad Co.* 305 Ill. 434, and *People* v. *Chicago and Eastern Illinois Railway Co.* 306 id. 402, followed.)

7. SAME—*when burden is on People to show additional tax was authorized to cover bond issue.* As it is optional, under section 15*d* of the Roads and Bridges act, whether the propositions for bonds and additional tax for State aid roads are submitted at the same or different elections, no presumption arises from the fact that the bond issue was submitted and carried that the additional tax was submitted to a vote, but the burden is on the People to show that the additional tax was submitted and authorized.

8. SAME—*president of county board is not authorized to call special meeting.* An order of adjournment of the board of supervisors to meet at the call of the president amounts to a *sine die* adjournment, as the president is not authorized to call a special meeting of the board.

9. SAME—*when act of county board at unauthorized meeting called by president is validated by act of 1921.* Although the president of the county board is not authorized to call a special meeting of the board, the action of the board at such a meeting adopting a resolution to submit to a vote of the people the propositions to issue bonds and to levy an additional tax for State aid roads is rendered valid by the validating act of 1921 for legalizing bonds for county highways, (Laws of 1921, p. 391,) as the legislature has the power, in the first instance, to authorize county boards to meet at the call of the president or chairman.

10. SAME—*act of 1921 legalizing call of election to issue road bonds does not create debt on the county.* Where the effect of the validating act of 1921 (Laws of 1921, p. 391,) is to legalize a resolution of the county board to submit to the people the propositions to issue bonds and to levy an additional tax for State aid roads, the act does not create a debt on the county without the sanction of the people, where both propositions were carried.

11. SAME—*premiums or interest derived from the sale of road bonds may be added to road fund.* A sum acquired by virtue of the sale of State aid road bonds at a premium is not required to be used to pay the principal of the bonded debt but may be added to the road fund created by the bonds and used in road construction, and a further sum acquired as interest from banks holding deposits of funds derived from the sale of the bonds need not be credited

to the interest account of the bonded debt but may be added to the unexpended road construction funds as a part of the earnings of that fund.

12. SAME—*State refund for State aid roads need not be used to retire bonds.* The county has the option to use the State refund for State aid roads either to retire bonds which the county has issued in the construction of such roads or to use the refund, when paid, in the construction of new roads, and it is not a valid objection to a tax to pay said bonds that the funds derived from the State were not used to pay the bonds.

13. SAME—*when a levy to pay interest on road bonds is excessive.* A levy of $45,000 to pay interest on road bonds amounting to $900,000 is excessive, where it appears from the record that the amount on hand in the interest account at the time of the levy is sufficient, without said levy, to pay interest charges for two years, with a balance over.

14. SAME—*section 25 of the Counties act, as amended in 1921, and State Highways act, must be construed together.* Section 25 of the Counties act, as amended in 1921, and the State Highways act, are statutes *in pari materia* and are to be construed as if they constitute one act.

15. SAME—*when additional tax for repairs and maintenance of State aid roads cannot be levied.* Where the people of the county have, prior to the amendment of 1921 to paragraph 6 of section 25 of the Counties act, authorized a bond issue and an additional tax for the payment of interest and principal thereon for State aid roads, the county cannot, by virtue of said amendment, levy a tax of eleven cents for repairs and maintenance of State aid roads in excess of the fifty cents allowed by law for county purposes.

16. SAME—*detention home tax may be levied in excess of county limit.* A tax of three cents on the $100 levied under section 5 of the Detention Home act is valid although it is in excess of the total of fifty cents allowed for county purposes, as the section specifically provides that said tax shall not only be in addition to other taxes for county purposes but may be in addition to the limit allowed for county taxes.

17. SAME—*purpose of provision requiring a tax to be itemized.* The purpose of the provision of section 121 of the Revenue act requiring that the levy of a tax shall be itemized is to give the tax-payer an opportunity to know the purposes for which the tax is being levied and collected and to object to an unjust levy; and this is a fundamental right, of which the tax-payer cannot be deprived by the levy of a large sum for miscellaneous claims.

18. SAME—*when a levy for miscellaneous claims is excessive.* The levy of a lump sum for contingent or miscellaneous expenses of the county is proper where the amount is small in proportion to the entire tax, but where the entire levy is $487,900 a levy of $40,000 for miscellaneous claims is excessive, where no reason appears why the needs of the county could not have been classified and itemized to a very much closer margin.

19. SAME—*appropriation ordinance need not itemize every purpose specified therein.* Under section 1 of article 8 of the Cities and Villages act, requiring that the annual appropriation ordinance shall specify in detail the purposes for which each appropriation is made and the sum or amount appropriated for each purpose, it is not necessary that every purpose shall be itemized.

20. SAME—*levy in an appropriation ordinance for constructing, maintaining and repairing streets and alleys is for single purpose.* A levy of a certain amount in an appropriation ordinance for constructing, maintaining and repairing streets and alleys is for a single purpose and is not to be confused with a levy for roads and bridges, which is required to be separated to show the amount for roads and the amount for bridges.

21. SAME—*when park district tax should be itemized.* A levy of a certain sum by a park district "for acquiring, laying out, establishing, constructing and maintaining parks, boulevards, driveways and boating basins" should state separately the amounts required for acquiring and maintaining parks and the amount for boulevards, driveways and boating basins, as taxes levied by park districts must conform, as nearly as practicable, to the manner and form in which taxes are required to be levied by other municipal corporations, and the amounts required for different purposes must be stated separately.

22. SAME—*filing of additional objections after the expiration of time rests in discretion of court.* While an objector may not, as a matter of right, file objections after the expiration of the time for filing the same, the matter of permitting the filing of additional objections rests in the discretion of the court, and on leave of court such objections may be filed prior to the entry of judgment, and if the People are taken by surprise it may be cause for continuance.

23. STATUTES—*when an act may be legalized by validating statute.* The legislature may by a validating act legalize an act done or attempted to be done by a municipality in any case where the legislature might have authorized such act originally.

APPEALS from the County Court of Lake county; the Hon. PERRY L. PERSONS, Judge, presiding.

ASHBEL V. SMITH, State's Attorney, (SIDNEY H. BLOCK, ARTHUR BULKLEY, SAMUEL HOLMES, GEORGE A. MASON, and JOHN V. NORCROSS, of counsel,) for the People.

E. S. GAIL, SCHUMACHER & MURPHY, HENRY F. DICKINSON, and DAVID H. JACKSON, for E. L. Millard *et al.* appellees, and George D. McLaughlin, appellant.

Mr. JUSTICE STONE delivered the opinion of the court:

Numerous tax-payers in the county of Lake filed objections to taxes levied and extended against their property. These objections involve the county tax of Lake county and certain taxes of the cities of Highland Park and Lake Forest and of the Highland Park East Park District. Certain objections were overruled and certain others sustained. The People appealed from the judgment of the court sustaining certain objections, and George D. McLaughlin took a separate appeal from the same judgment, in which he complains of the judgment of the court overruling certain of the objections. The appeals have been consolidated in this court for decision.

It is not clear from the briefs and abstracts as to just what items or judgment thereon the parties complain. The objections, so far as we understand them from the record and the briefs, will be considered without regard to whether they arise in the one case or the other of the two consolidated here. It appears from the record that but one judgment was rendered on all the objections, and by stipulation it was agreed that the judgment on review pertaining to the various objections should be binding alike on all objectors.

The first objection to be considered is that the board of review of Lake county unlawfully and without authority increased the valuation of lands in the cities of Highland Park and Lake Forest by a horizontal raise of thirty per cent over the quadrennial assessment of 1919. The county

court sustained this objection. The record shows that prior to the entry of the order raising these valuations the board of review gave notice to fifty or more owners of real estate in each of those cities of the proposed increase in the valuation of real estate and improvements thereon, for the reason that the assessor's valuation in 1919 was not made upon the proper basis and that equalization was necessary. On the date fixed in the notice a hearing was had before the board on this matter, and on the 6th day of September, 1921, the board adopted a resolution increasing the value of the real estate and improvements thereon by thirty per cent over the assessor's valuation. The action of the board of review in this case was taken under the third paragraph of section 35 of the Assessment law of 1898. (Laws of 1898, p. 36.)

Equalization of assessments is the adjustment of graduated values of property as between different taxing districts, so that the whole tax imposed upon each taxing district shall be justly proportioned to the value of the taxable property within its limits, in order that one taxing district may not pay a higher tax in proportion to the value of its taxable property than another. (*People* v. *Orvis,* 301 Ill. 350.) The constitution provides that the ascertainment of the value of property for the purpose of taxing shall be vested in such persons as are determined by the legislature and prohibits the fixing of such values by any other person. Courts have no power to fix the value of property for taxation. Such valuation is not open to supervision of the judicial department of the State unless it is so excessive as to amount to fraud. (*Oak Ridge Cemetery* v. *Tax Com.* 299 Ill. 430; *Burton Stock Car Co.* v. *Traeger,* 187 id. 9; *People's Gas Light Co.* v. *Stuckart,* 286 id. 164; Cooley on Taxation,—3d ed.—166.) Fraud in the valuation of property for the purposes of taxation cannot be presumed but must be proved by sufficient evidence. The mere fact of

307–36

over-valuation will not establish fraud, but if it be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive, such facts are evidence of fraud. The assessor and the board of review have a right to take into consideration their own knowledge and information acquired by their investigations, and may compare the value of the property in question with that of other property of the same character, so as to form an honest judgment as to the value to be fixed. (*People* v. *St. Louis Merchants Bridge Co.* 291 Ill. 95.) The presumption is that the tax is just and that the officers levying it have discharged their duties. This presumption can be overcome only by clear and explicit testimony. (*People* v. *Chicago, Burlington and Quincy Railroad Co.* 290 Ill. 327; *In re Maplewood Coal Co.* 213 id. 283.) The burden is upon the objector to establish fraud by clear and sufficient evidence.

The question of fact involved here is whether or not the board of review, by making this horizontal raise of thirty per cent on the property in these cities, has increased the valuation of the property to such an extent as to cause it to be taxed upon a greater ratio of its actual value than is the property in the other taxing districts of the county, and if this be so, whether the circumstances were such as to constitute proof of fraud in law. Whether or not there was an arbitrary and grossly excessive valuation upon the property in Highland Park and Lake Forest when compared with the values fixed in other taxing districts of the county depends upon whether the property in those cities is by this raise required to pay more than its just proportion of the taxes to be levied. This, in turn, depends upon whether the increased valuation for assessment purposes as to such property is greater in proportion to its actual value than the ratio which the valuation for assessment purposes of property in other taxing districts of the county bears to the actual value of such last mentioned property. In order to

determine this, the actual value of the property in the various districts of the county must be known. In order that a difference in such value constitutes fraud on the part of the board of review it must be shown to have been so great and its existence so evident as to overcome the presumption that the board acted with honest motives and exercised honest judgment in determining the values fixed by it. It is not contended that the horizontal raise of thirty per cent in this case brings the valuation of the property for assessment purposes above its actual value.

The assessor of Deerfield township testified that he placed the valuation for assessment purposes at fifty per cent of what, in his judgment, was the actual fair cash value of the property assessed; that he did this both as to property inside these cities and in Deerfield township outside. It is not shown how other assessors of the county fixed the valuation of lands for taxing purposes except by the testimony of the assistant supervisor of assessments, who stated that he told all assessors to put the taxing valuation at fifty per cent of the actual value. It may be assumed that this was done. Since the assessor testified that he fixed the valuation for taxing purposes at fifty per cent of the actual value according to his judgment, it may be said that his testimony amounted to evidence that the actual value of the property in Highland Park and Lake Forest was, according to his judgment, twice the value taken for assessment purposes.

William C. Heinroth, a real estate dealer living in Evanston, testified on these objections that he made an investigation of the sales of property in Highland Park and in Deerfield township outside the limits of the incorporated villages or cities for the year 1919, and found there had been during that year sixty-eight transfers in the city of Highland Park, totaling $461,150; that the assessor's valuation was $243,449; that the average ratio which the assessor's valuation bore to the sale price on these sixty-

eight pieces of property was fifty-three per cent; that in Deerfield township, outside corporate cities or villages, he found fifteen sales of land and that the sale price aggregated $272,000, while the assessor's valuation on these tracts aggregated $41,120, or a ratio of 15.1 per cent. The average sale price per acre was $504.64, while the average valuation of the assessor was $76.40. It appears from the cross-examination of this witness that he did not know whether the sale price of these tracts was normal or abnormal for similar lands in this taxing district or whether it was a fair average for the lands in the townships outside the cities, though he admits that the prices of these tracts may have been affected by the fact that they lie along a paved road known as the Green Bay road and are adjacent to the city of Highland Park, and therefore desirable as country residences for city people. Unless these prices were shown to be a fair average for property similarly situated in the taxing districts outside the cities of Highland Park and Lake Forest they do not form evidence of great value in determining the actual value of the lands within the county; nor can the sale of the sixty-eight pieces of property in Highland Park, without proof on the matter, be taken as evidence that the judgment of the assessor as to the actual value of the property in that city is correct and that of the board of review concerning the same property incorrect. No proof is given by this or other witnesses of actual value of other property in the city of Lake Forest, other than the judgment of the assessor who made the assessment. Apparently this evidence was not given to the board of review, though presumably it could have been obtained by it. The county court refused to admit in evidence the tabulation made by the witness Heinroth, the substance of which we have here referred to; but treating it as competent, such testimony, with the judgment of the assessor, does not establish the actual value of the property in Highland Park and Lake Forest with that clearness and certainty

necessary to constitute evidence that the board of review did not exercise honest judgment in coming to the conclusion that the valuation for assessment purposes should be raised thirty per cent in those cities. The finding of the board of review in this regard is equivalent to a finding on its part that the actual value as determined by the assessor should be raised fifteen per cent.

Courts cannot set up their judgment as to values of property against that of persons to whom the legislature has delegated the duty of determining that matter. Unless the proof shows that the increase in valuation made by the board is so excessive as to amount to fraud the courts cannot interfere with that valuation. Since the proof does not show the actual value of the property in Highland Park and Lake Forest, it is obviously impossible to say whether the valuation of it as fixed by the board is excessive as compared with the property outside those cities. There was some evidence of values of land in other taxing districts in Lake county, but there being no sufficient basis for comparing the actual value of such property with the actual value of the property within those cities, it is of no profit to discuss the evidence concerning values in the taxing districts outside. The objectors have not met the burden cast by the law upon them to show that the horizontal raise by the board of review was fraudulent, and the county court erred in sustaining the objection.

Objections were filed to the county tax, aggregating ninety-seven cents on each $100 valuation. This ninety-seven cents is made up of the following extensions: Fifty cents for general county purposes, which included $15,000 for repairing and maintaining State aid roads and $1000 for mothers' pension fund. In addition to this rate of fifty cents there was an excess levy of thirty-three cents for the payment of interest on bonds and bonded indebtedness; three cents for detention home, and eleven cents for maintaining State aid roads not yet approved by the State.

It is urged that the act of June 24, 1921, amending paragraph 6 of section 25 of the Counties act, under which certain of these levies were made, is void, as violating certain sections of the constitution. The same objection here urged has been considered by this court and decided contrary to the contention of the objectors. *People* v. *New York Central Railroad Co.* 305 Ill. 434; *People* v. *Chicago and Eastern Illinois Railway Co.* 306 id. 402.

It is urged by the objectors in their argument that the $1000 for mothers' pension fund is in excess of the limit of fifty cents provided by paragraph 6 of section 25 of the Counties act. The record, as we understand it, shows this tax to have been extended as a part of the fifty cents for county purposes and not as an excess. This tax is valid. *People* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 295 Ill. 214.

The thirty-three cents additional tax for the payment of interest on bonds and bonded indebtedness was extended for the purpose of paying principal and interest on two bond issues,—$25,000 for the payment of principal, and $20,000 for interest on State aid road bonds authorized by a vote of the people prior to 1919 for the principal sum of $500,000. As to this bond issue, nothing appears in the record to show that at the election held for that purpose there was submitted the question of an additional tax for the payment of the principal and interest. It is contended by the People that there is a presumption of law that such additional tax levy was authorized at the time the bonds were voted upon. Section 15*d* of the Road act contains a provision for submitting to a vote of the people the issuance of bonds for State aid road purposes without submitting the question of an additional tax, and also a provision whereby the additional tax may be included with the proposition to issue bonds. Section 28 of the Counties act also provides that if it shall be deemed necessary to submit to a vote of the people, at the same election, the question of

issuing bonds and the raising of an additional tax the same may be included in one proceeding. From these sections it will be seen that it is optional whether or not the additional tax be included with the proposition of issuing bonds or omitted therefrom. Therefore no presumption arises from the vote on the bond issue that the proposition of additional tax was also presented for a vote of the people. The burden was upon the people to show that such additional tax was authorized, as required by the statute, before the same could be extended in excess of the fifty cents under paragraph 6 of section 25 of the Counties act. (*People* v. *Hoerr*, 294 Ill. 338.) The county court properly sustained the objections to this additional tax. So far as shown by the record these bonds and interest are valid but must be paid within the limit of fifty cents fixed by law.

In the thirty-three cents additional tax for bonds and interest on bonds there was also included the sum of $50,-000 for principal and $45,000 for interest on road bonds amounting to $900,000, issued by authority of a vote of the people at an election held in 1919, at which election the issuance of $1,000,000 in bonds and in addition a tax of thirty cents in excess of the fifty cents allowed by law was submitted and carried. The county board was authorized by this vote to levy a tax of thirty cents in excess of the legal rate of fifty cents for the payment of principal and interest on said bonds, unless, as contended by the objectors, the election on such bond issue and additional tax was not a valid election. So far as is shown by the record the amounts so levied were within the thirty cents authorized as an additional tax by a vote of the people.

It is contended, however, by the objectors that the $1,000,000 bond issue is void for the reason that the election at which the same was submitted to the people was not called by the board of supervisors, as required by law, in that the regular meeting of the board in September was adjourned to meet on the call of the chairman; that this

was a *sine die* adjournment; that on October 6, 1919, it met "pursuant to adjournment" and again adjourned to meet at the call of the chairman, and pursuant thereto met on October 11, 1919, at which meeting the resolution for the bonds and to authorize the additional tax was passed, and a special election for that purpose called for November 4, 1919. The People say in answer to this argument that the circuit court of Lake county, in a cause entitled "Hawkins, for himself and all tax-payers of Highland Park, *vs.* County of Lake," entered a decree in 1920 in which it was held that the board of supervisors of Lake county did not comply with the law in submitting said bond issue of $1,000,000 and additional tax to a vote of the people for the reason here now urged, but that said bond issue had been legalized by an act of the legislature in 1921 (Laws of 1921, p. 391,) and was therefore valid, and that since no appeal or writ of error was prosecuted to review the decree, the question of the validity of the bond issue is *res judicata* and cannot be inquired into on tax objection. To this contention of the People the objectors urge that the decree is *res judicata,* if at all, only as to Hawkins and all tax-payers of Highland Park and has no application to objectors and other tax-payers of the county not resident in Highland Park. It is also urged that the validating act is void for the reason that the legislature could not validate an unauthorized special meeting of the board of supervisors or declare an action by the individual members of the board of supervisors at an alleged special meeting binding upon the county; that the curative act is, in effect, the creation of a debt upon the county by the legislature and not by the duly constituted officers of the county.

The meeting of the board of supervisors on October 11, 1919, at which the resolution to issue bonds was adopted, was not a continuation of the annual September meeting for the reason that the order of adjournment to meet at the call of the president terminated the September meeting

as effectually as a *sine die* adjournment, and the president cannot be authorized by the board to call a special meeting. (*Marsh* v. *People,* 226 Ill. 464.) The validating act referred to is an act entitled "An act to legalize and make valid county bonds and additional tax therefor, voted or attempted to be voted, for the purpose of constructing and improving public highways of or in a county and to confer upon county boards full power and authority to issue any such bonds and to abate suits pending," (Laws of 1921, p. 391,) and provides as follows: "That in all cases where at any election held in any county in this State, a proposition to issue county bonds for the purpose of raising money to be appropriated and used in the construction of county highways or in aiding in the construction of roads and highways in any part of such county, or in the improvement in any manner of any public highway or highways of such county, and any and all additional taxes for the payment thereof, a majority of the voters voting on such proposition or propositions at such election have voted in favor of issuing county bonds of such county for such highway improvement purpose or purposes, and any and all additional tax or taxes therefor, all such elections and proceedings shall be, and the same hereby are made legal and valid and sufficient to authorize the county board in any such county to issue any such bonds, and any bonds which may have been or may hereafter be issued in pursuance of any such election or elections and all proceedings thereof, shall be, and the same hereby are made, whenever issued by such county board of such county, the legal, valid and binding obligation of such county."

It is settled in this State by numerous decisions that the legislature may by a validating act legalize an act done or attempted to be done by a municipality in any case where the legislature might have authorized such act originally. (*People* v. *Fifer,* 280 Ill. 506; Cooley's Const. Lim. 381; *People* v. *Militzer,* 272 Ill. 387; *People* v. *Peltier,*

275 id. 217; *People* v. *Wisconsin Central Railroad Co.* 219 id. 94.) The legislature had the power, had it seen fit to do so, to enact a law providing that county boards may adjourn a regular meeting subject to the call of the chairman, and that such adjourned meeting, when so called, should be valid. It follows that it was within the power of the legislature to validate any act within the power of the board when legally convened. *Steger* v. *Traveling Men's Building Ass'n,* 208 Ill. 236.

There is no contention that the resolution to submit the matter to a vote of the people was not adopted by a majority of the board, and it is admitted that the majority of the people voting on the proposition to issue bonds and for an additional tax voted in favor of those propositions and that proper notice of the election was given. The validating act legalized the call of the election and the election itself but did not compel issuance of the bonds. The bonds and the tax were authorized by the vote of the people. The validating act, therefore, did not, as contended, create a debt on the county by an act of the legislature without the sanction of the people of the county or without the action of the duly constituted officers thereof, and is not open to that objection to its constitutionality.

Of the $1,000,000 of bonds authorized $900,000 were issued. The item of $50,000 levied was for the purpose of paying the principal due thereon, and it is objected that this levy was excessive, for the reason that the bonds were sold at a premium of $18,387, and that this premium should have been applied on the payment of the $50,000 principal due and the levy reduced by that amount. This contention is without merit. The $18,387 premium derived from the sale of the bonds is a part of the road fund created by such bonds, and the county had a right to place that sum in the road construction account and was not required to use it in re-payment of an installment on the principal.

It is also urged that Lake county is to receive from the State on the refund account the sum of $532,642.77, which should be utilized to pay off installments due on the principal of the bonded indebtedness. While it is admitted that this fund was not at the time of the hearing paid to the county and there is no showing that it would be at the time the installment of the principal· was due, yet it is claimed that when paid it would lie idle in the bank and should therefore be drawn upon for the purpose of meeting the installment on the principal. Section 15*d* of the Road and Bridge act as amended in 1917 (Laws of 1917, p. 715,) provides that the county entitled to this refund shall be entitled to use the money allotted to it by the State highway commission either to defray one-half of the cost of constructing new State aid roads under the provisions of the act, or to apply the money on the payment of any bonds or other obligations which have been or may be issued by such county under any law of the State to meet the construction of any State aid road or roads constructed by such county at its own expense. It will be seen, therefore, that the county has the option either to use such funds, when paid, to retire bonds or to construct new roads. The objectors, therefore, cannot complain that such funds were not used to retire bonded indebtedness. The objection to this item of $50,000 should have been overruled.

Lake county also levied the sum of $45,000 to pay interest on the $900,000 road bonds sold. It is admitted in the record that on January 1, 1922, the county had on hand in the interest account on this bond issue, exclusive of the 1921 levy objected to, the sum, of $91,699.14. The amount of this fund at the time this tax was levied was still larger by the amount of interest payments made during 1921, and the objectors urge that there was no occasion to levy a tax in 1921 to meet interest charges. The interest payments are due June 30 and December 31 of each year. At the time of the hearing the county had paid out of this

interest account the current six months' interest. On December 31, 1922, it doubtless paid an additional sum of $22,500, less the interest on the $50,000 of principal paid. It would appear, therefore, that on January 1, 1923, there still remained in the interest account, over and above the levy of 1921 for interest, which had been collected, the sum of $46,696.14, or more than enough to pay the entire interest charges unpaid up to and including the year 1923, without drawing on the levy of 1921. In other words, the funds on hand in the interest account when the levy of 1921 was made were sufficient, without the 1921 levy, to pay interest charges for two years, with a balance over. It is admitted that this accumulation in the interest fund was derived from levies made under the bond issue. As we understand it, it was from levies for interest on this issue subsequent to the election authorizing the bonds in 1919 and prior to the sale thereof on December 31, 1921. From whatever source it came, it being admitted that it is properly in the interest account on this bond issue, there was no reason for the levy of the interest charge of $45,000, and the whole levy was excessive and the objection to it should have been sustained.

Counsel for the objectors also contend that an item of $9000 derived as interest from the banks on deposit of funds from the sale of the bonds should be credited to interest account. This item is not to be credited to interest account. Interest on the fund derived from the sale of the bonds is a part of the earnings of unexpended road construction funds and is to be credited to that account.

The county court overruled objections to an additional tax of eleven cents for maintenance of State aid roads not yet approved. It is contended by the People that although the county of Lake had voted for State aid road bonds, and at the same election an additional tax was authorized for the payment of principal and interest on said bonds, nevertheless, under section 14 of "An act in relation to State high-

ways," approved June 24, 1921, (Laws of 1921, p. 793,)
an additional tax not exceeding twenty-five cents on the
$100 may be levied for maintenance of State aid roads un-
less an additional tax for repair and maintenance has been
authorized by an election, as contemplated by the amend-
ment of clause 6 of section 25 of the Counties act,—in
other words, that an election authorizing the issuance of
bonds, and an additional tax to pay the principal and inter-
est thereof, does not preclude the county from laying an
additional tax under the State Highways act for mainte-
nance of State aid roads. The amendment to section 25
of the Counties act and the State Highways act are stat-
utes *in pari materia* and are construed as though they con-
stitute one act. (*People* v. *Cleveland, Cincinnati, Chicago
and St. Louis Railway Co.* 306 Ill. 459; *Same* v. *Same,* id.
467.) The county of Lake having prior to the amendment
of 1921 authorized the bond issue and an additional tax for
the payment of interest and principal thereon, cannot now
levy a tax of eleven cents for repairs and maintenance of
State aid roads in excess of the fifty cents allowed by law
for county purposes, and the objection to this tax should
have been sustained.

It is also urged that the court erred in sustaining objec-
tion to the detention home tax of three cents. Section 5 of
the Detention Home act provides that the county board shall
have power, "in addition to taxes levied and collected for
other county purposes, and in addition to the fifty cents
per $100 valuation limit of taxes now provided for county
purposes, to annually levy and collect a tax not exceeding
two-thirds of one mill on the dollar valuation." Objectors
contend that this language is to be construed as that relat-
ing to the tax provided for in the Mothers' Pension act
and the Tuberculosis Sanitarium act, which received con-
sideration of this court in *People* v. *Wabash Railway Co.*
286 Ill. 15, and *People* v. *Cleveland, Cincinnati, Chicago and
St. Louis Railway Co.* 295 id. 214; also in *People* v. *Louis-*

*ville and Nashville Railroad Co. (ante,* p. 173,) relating to
the act of 1911 concerning street and bridge tax. (Laws of
1911, p. 186.) In the acts just referred to, the language
of the statute gives to the taxing authorities power to levy
a tax in addition to the tax for county or city purposes, as
the case may be. This language was construed in the cases
referred to, to mean that the taxes provided for are in ad-
dition only to the taxes authorized to be levied and are
not subject to reduction by scaling but such tax may not
be levied in excess of the limitation fixed by law. The
language of section 5 of the Detention Home act is sub-
stantially broader than that of the acts referred to. This
tax may be levied not only in addition to the tax for other
county purposes, but there is added the language, "and
in addition to the fifty cents per $100 valuation *limit* of
taxes now provided for county purposes." It will be seen
that the language of this act specifically authorizes a tax
not only other than that allowed for county purposes but
in addition to the limit of fifty cents. The court erred in
sustaining the objection to this tax.

Objection is also raised to the item of county tax "For
miscellaneous claims, $40,000," for the reason that it does
not specify the purposes for which the fund is to be used.
The total tax amounted to $487,900. It is not unlawful
to levy a comparatively small amount to meet contingencies
that cannot be anticipated. While no hard and fast rule as
to amount or percentage of total tax can be laid down, the
purpose of the provision of section 121 of the Revenue act
requiring that the levy of a tax shall be itemized, is to
give the tax-payer an opportunity to know the purposes for
which the tax is being levied and collected, and thereby pre-
sent an opportunity to object to an unjust tax levy. (*Peo-
ple* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway
Co.* 231 Ill. 209.) This court has recognized the necessity
for an assessment of a small amount for contingent or mis-
cellaneous expenses, for the reason it is not possible to fore-

see all contingencies requiring the expenditure of money. Such levy must, however, be in very small proportion to the entire tax. The right of the tax-payer given by section 121 of the Revenue act to have separately stated the purposes for which the tax is levied is a substantial right, of which he cannot be deprived through the guise of possible needs. (*People* v. *Chicago, Burlington and Quincy Railroad Co.* 253 Ill. 100.) In this case the levy for miscellaneous purposes is nearly ten per cent of the entire tax. There appears to be no reason why the needs of the county could not have been classified and itemized to a very much closer margin. While counsel do not agree and the record does not clearly show whether the court sustained or overruled the tax-payers' objection as to this item, the objection should have been sustained.

The court sustained an objection to the levy by the city of Highland Park of $18,000 for constructing, maintaining and repairing streets and alleys. It is claimed that this levy is void for the reason that it shows on its face that it is for two separate purposes and therefore should have been itemized. Section 1 of article 8 of the Cities and Villages act requires that the annual appropriation ordinance shall specify in detail the purposes for which each appropriation is made and the sum or amount appropriated for each purpose. It is not, however, necessary that each purpose shall be itemized. (*People* v. *Peoria, Decatur and Evansville Railroad Co.* 116 Ill. 410.) The appropriation in question was made for constructing, maintaining and repairing streets and alleys. This is a single purpose and is not to be confused with a levy for roads and bridges, which is required to be separated. In the latter class of cases it is held that the tax-payer should know how much is levied for roads and how much for bridges. A levy for constructing, maintaining and repairing streets and alleys does not indicate separate and distinct purposes. The court erred in sustaining the objection to this tax.

Objections were also filed to the Highland Park East Park District tax of $9410, levied "for acquiring, laying out, establishing, constructing and maintaining parks, boulevards, driveways and boating basins," on the ground that the tax was levied for separate and distinct purposes and therefore should have been itemized. This objection was sustained. In *People* v. *Vogt,* 262 Ill. 170, this court, in construing section 22 of the Park act, held that the taxes to be levied by the corporate authorities of a park district must conform, as nearly as practicable, to the manner and form in which taxes are levied by cities and villages, which includes itemization of taxes for separate and distinct purposes, in order to afford an opportunity to the tax-payer to object to such items as he may consider illegal or unjust. Park districts have power to do the things for which this tax is levied. (Hurd's Stat. chap. 105, sec. 175.) But such authority does not relieve the park board from separately stating the purposes for which the tax is levied and specifically setting forth the amount levied for each purpose. The acquiring and the maintenance of parks are separate and distinct purposes, as are laying out boulevards, driveways and the construction of boating basins. These purposes should have been separately stated. The court did not err in sustaining the objections thereto.

The city of Highland Park provided in its annual appropriation ordinance the sum of $1256 for public benefit and in its levying ordinance the sum of $7130 for said purpose. The tax was extended by the county clerk for the latter amount, and objection was made and sustained as to the difference, amounting to the sum of $5874. It is not contended by the People that the extension of this tax was valid, but it is urged that no objection was filed to the excess until after the time fixed by the court for filing objections had expired. It appears from the record that this objection was filed by leave of court after the expiration of

the time for filing objections but prior to the entry of judgment herein. The objector may not, as a matter of right, file objections after the expiration of the time for filing the same. We have never understood it to be the rule, however, that such objections may not be filed on leave of court so to do. If the People are taken by surprise it may be cause for continuance, but in this case it is not urged that the People were surprised. The matter of permitting the filing of additional objections after the time for filing objections has expired rests in the sound discretion of the court and is not subject to review in the absence of abuse of that discretion. Section 191 of the Revenue act provides that "in all judicial proceedings of any kind, for the collection of taxes and special assessments, all amendments may be made which, by law, could be made in any personal action pending in such court." In construing this language of the statute this court in *Chicago, Madison and Northern Railroad Co.* v. *People*, 207 Ill. 312, said: "This language is broad and comprehensive, and under it amendments to objections to judgment and order of sale for delinquent taxes may and should be permitted in so far as may be necessary to permit objectors to fairly present any existing valid objections to the application for judgment and sale against their lands for delinquent taxes, if made in apt time." The county court did not abuse its discretion in permitting the additional objection to be filed nor did it err in sustaining said objection.

The judgment in the consolidated causes is reversed and the causes are remanded, with directions to enter judgment in accordance with the views herein expressed.

*Reversed and remanded, with directions.*