STATE ex rel. SCHOONOVER, Relator, *v.* STEWART
ET AL., Respondents.

(No. 6,807.)

(Submitted January 7, 1931. Decided March 4, 1931.)

[297 Pac. 476.]

258

*Mr. C. A. Spaulding* and *Mr. D. M. Durfee,* for Relator, submitted an original and a reply brief; *Mr. Spaulding* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. L. V. Ketter,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Ketter* argued the cause orally.

264

*Mr. E. G. Toomey* and *Mr. R. E. McHugh, Amici Curiae,* submitted a brief on behalf of Respondent and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

By writ of review the State Board of Equalization was required to certify to this court its records and proceedings in a matter relating to the taxation of irrigated lands in Granite county.

The facts are that in the spring of 1930 taxpayers of Granite county, twenty-three in number, each owning irrigated lands, returned to the county assessor, as required by law, a list containing, with other information, a description of their respective irrigated lands with a statement of what they deemed the full and true cash value thereof. Subsequently these taxpayers severally received from the assessor a copy of the assessment as made by him, showing an increase in each case;

the irrigated lands he placed in one of two subdivisions, denominated Irrigated 1st and Irrigated 2d, valued respectively at $60 per acre and $50 per acre. In July, 1930, each of the twenty-three taxpayers appeared before the board of county commissioners of Granite county, then sitting as a county board of equalization, and made application in writing for a reduction in the valuation placed by the assessor upon the respective tracts of irrigated land. Each set forth that the assessment made by the assessor was grossly excessive, and was made without regard for the real factors affecting and determining the value of the land; that the assessor in the exercise of his discretion had exhibited gross error and mistake; that the lands were assessed at least one-third above their value. They represented also that because of conditions in Granite county, which were described, their lands are of less value than are like and similar lands in contiguous counties, stating the reasons upon which the statement is based, none of which the assessor took into account; that the assessments subject the complaining taxpayers as land owners in Granite county to a burden of valuation and assessment wholly arbitrary and capricious and saddle them with an undue and unfair tax burden as compared with the burden borne by the owners of land of like and similar character in contiguous counties and other counties in Montana, etc.

The attack on the assessment, it is seen, is under two general heads: (1) that the valuation placed upon the lands is at least one-third above their worth, and (2) by arbitrary and capricious action the complaining taxpayers are subjected to a greater burden than are the taxpayers in comparable situations in the other counties.

When the county board of equalization refused to disturb the assessments, the applicants appealed to the state board, which thereafter, having given the notices required by statute, set the appeals for hearing at Philipsburg. After the hearing, at which witnesses testified, the board made an order reducing the valuation on the irrigated lands of appellants which

had been assessed at $60, to $40, and upon those which had been assessed at $50, to $30.

Relator, dissatisfied with the action of the state board, although he did not appear before it, alleges that he is and has been for many years the owner of irrigated lands in Granite county "of the same character and class" as the lands of the appellants, and there are a large number of others in that county owning lands of the same character whose assessments were not reduced, and that in making the order in favor of the appellants, the state board exceeded its jurisdiction and authority.

In the board's return to the writ it is recited that a number of witnesses testified as to the character and valuation of the lands involved in the several appeals, whereupon the chairman of the county board made a statement as to the position of that board. Thereupon the chairman of the state board asked if any other person present had any objection to the granting of the petitions, "but there was no testimony offered or objections filed to the application of the appellants, either in person or by counsel."

Originally section 15 of Article XII of our Constitution made it the duty of the State Board of Equalization, consisting of the governor, secretary of state, state treasurer, state auditor and attorney general, "to adjust and equalize the valuation of the taxable property among the several counties of the state." This court, in *State ex rel. Wallace* v. *State Board of Equalization*, 18 Mont. 473, 46 Pac. 266, 268, held that under the provisions of that section the state board had no power to increase the total valuation of the property of the state "as disclosed and fixed by the abstracts and statements transmitted to it by the assessors and county boards of equalization." This holding was followed in *State ex rel. State Board of Equalization* v. *Fortune*, 24 Mont. 154, 60 Pac. 1086, in which Chief Justice Brantly concurred on the ground of *stare decisis;* he thought the *Wallace Case* "demonstrably wrong."

In 1916, the people, dissatisfied with the restricted powers of the state board, adopted an amendment to section 15 of Article XII, which in effect abrogated the rule laid down in the *Wallace Case,* supra, and greatly extended the powers of the board.

The Fifteenth Legislative Assembly created a Tax and License Commission (Chap. 73, Laws of 1917, p. 100), which, after a comprehensive review of the perplexing taxation problem, which is ever present, recommended a number of laws, including the Classification Act, and advised a further amendment to section 15.

The Seventeenth Legislative Assembly submitted to the people at the general election in 1922 an amendment which embraced the comprehensive powers of the 1916 amendment and added to them. The amendment changed the personnel of the state board, substituting for the governor, secretary of state, state treasurer, state auditor and attorney general, three persons appointed by the governor by and with the advice and consent of the senate. Omitting parts not necessary to be stated here, the 1922 amendment reads:

"The board of county commissioners of each county shall constitute the county board of equalization. The duties of such board shall be to adjust and equalize the valuation of taxable property within their respective counties, and all such adjustments and equalizations may be supervised, reviewed, changed, increased or decreased by the State Board of Equalization. * * * The State Board of Equalization shall adjust and equalize the valuation of taxable property among the several counties, and the different classes of taxable property in any county and in the several counties and between individual taxpayers; supervise and review the acts of the county assessors and county boards of equalization; change, increase, or decrease valuations made by county assessors or equalized by county boards of equalization; and exercise such authority and do all things necessary to secure a fair, just and equitable valuation of all taxable property among counties, between the different classes of property, and between

individual taxpayers. Said State Board of Equalization shall also have such other powers and perform such other duties relating to taxation as may be prescribed by law." (Page 614, Laws of 1923.)

More comprehensive words could hardly have been chosen to express the intention of the people to confer upon the state board broad and far-reaching power in matters relating to taxation. (*Butte & Superior Min. Co.* v. *McIntyre*, 71 Mont. 254, 229 Pac. 730.) As counsel for respondents say, by adopting the 1922 amendment the people "put beyond legislative detraction" the following co-ordinate grants of power to the State Board of Equalization: (a) to adjust and equalize the valuation of the taxable property among the several counties; (b) to adjust and equalize the valuation of the different classes of taxable property in any county; (c) to adjust and equalize the valuation of the different classes of taxable property in the several counties; (d) to adjust and equalize the valuation of the different classes of taxable property between the individual taxpayers; (e) to supervise and review the acts of the county assessors; (f) to supervise and review the acts of county boards of equalization; (g) to change, increase, or decrease valuations made by county assessors; (h) to change, increase, or decrease valuations equalized by county boards of equalization; and (i) to exercise such authority and do all things necessary to secure a fair, just and equitable valuation of all taxable property among counties, between the different classes of property, and between individual taxpayers. In addition, the people declared that the state board "shall have such other powers, and perform such other duties relating to taxation as may be prescribed by law."

As clear as are the broad powers expressly granted to the state board, an implied, though definite, restriction is equally clear: the board shall not intentionally discriminate in favor of one county and against another, or between the different classes of property in any county, or in favor of one individual and against another. All taxing authorities agree

that it is impossible to prevent inequalities in any scheme of taxation.

Section 1 of Article XII of the Constitution makes it the duty of the legislative assembly to prescribe such regulations as shall secure a just valuation for taxation of all property, except as otherwise provided in the Constitution.

Section 11 of the same Article provides: "Taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform upon the same class of subject within the territorial limits of the authority levying the tax."

In *Hilger* v. *Moore*, 56 Mont. 146, 182 Pac. 477, 481, wherein the constitutionality of the Classification Law was sustained, this court said that sections 1 and 11 of Article XII are a mandatory injunction to the legislature "that it shall prescribe such uniform mode of assessment as shall secure a just valuation of all taxable property, that all taxes shall be levied and collected by general laws and for public purposes only, and that they shall be uniform upon the same class of property within the territorial limits of the authority levying the tax. This is the rule of uniformity declared by our Constitution, if we are able to determine the intention of its framers aright."

Section 2001, Revised Codes, 1921, provides that all taxable property must be assessed at its full cash value. This section has not been changed since its enactment (Laws of 1891, p. 75); and its mandate is the law to-day. (*Daly Bank & Trust Co.* v. *Board of County Commissioners*, 33 Mont. 101, 81 Pac. 950; *Dennis* v. *First National Bank*, 55 Mont. 448, 178 Pac. 580.) "The terms 'value' and 'full cash value' mean the amount at which the property would be taken in payment of a just debt due from a solvent debtor." (Sec. 1996, subd. 5, Rev. Codes 1921.)

Section 2024 makes it the duty of the state board to provide for a general and uniform method of classifying lands, and by section 2025 the county commissioners of the several counties are required to provide in such manner as they may

determine, for the classification of all lands, with certain exceptions, within their respective counties, "which classification must be made and a record thereof kept upon such maps and plats, and entered in such books of record" as may be prescribed by the state board.

By section 2026 it is provided that all lands shall be classified into: "1. Agricultural lands; 2. Irrigated or non-irrigated lands; 3. Grazing lands; 4. Timber lands and Stump lands; 5. Lands bearing stone, coal, or valuable deposits; 6. Lands bearing natural gas, petroleum, or other mineral deposits; 7. Lands which may be valuable for more than one purpose shall be so classified. All lands shall be classified in accordance with the legal subdivision thereof. The State Board of Equalization may provide for such other and additional subdivisions of classification herein enumerated as they may deem proper."

Section 2029 provides that "the classification herein provided shall be full, complete and accurate, and shall be used as the basis upon which land values shall be fixed for purposes of assessment and taxation."

It is the duty of the county assessor "to assess all lands for taxation purposes in accordance with the classification, as made by the board of county commissioners." (Sec. 2030.)

Sections 2024 to 2031, inclusive, were enacted in aid of the Classification Law (secs. 1999, 2000, Rev. Codes, 1921). While the purpose of these sections, particularly 2029, 2030 and 2031, is not entirely clear, it is reasonable to suppose that they were intended to serve as a guide to the taxing authorities in arriving at a fair, just and equitable valuation of all lands. Section 2029 directs that the classification provided for in sections 2025 and 2026 shall be "full, complete and accurate." That is, there shall be furnished, as to each subdivision (sec. 2023), a description of the topography of the land, its general character, or if need be, its special character, the use for which it is adapted, whether it is farmed or not, whether it is irrigated or not, and so forth.

We agree with the attorney general that the only purpose of the classification prescribed in sections 2024 *et seq.* is to determine relative values. "The classification is merely a grouping of lands according to the purposes for which they are valuable but the full cash value of them does not in any manner emanate from the classification but on the contrary can only be fixed by the judgment of the taxing officers. Whatever the character of the land it must still be assessed on a uniform basis, namely: its full cash value."

There is no direction that the valuation of the several subdivisions shall be written into the records, maps and plats provided for in section 2025. This would be impractical. The purpose of the statute is to place land of the same general character in the same class, not to place the same value upon all lands in the same class. The conclusion that each tract of land must be separately valued is inescapable. Else how can a fair, just and equitable assessment be made? It is absurd to say that all irrigated lands, and nonirrigated lands—presumably lands susceptible of irrigation but not irrigated (sec. 2026, subd. 2)—in any county of the state are of the same value. Where irrigation is required nonirrigated lands are worth less than irrigated lands. Based upon common knowledge anyone familiar with Montana conditions can readily perceive many factors materially affecting the values of irrigated lands.

A few illustrations will suffice, but many more might be given. One tract has appurtenant thereto a sufficient water right available at all times of the year; another has an insufficient right, one available during high water only; irrigated lands with a light soil underlaid by gravel are not as valuable as lands with a good soil underlaid with clay; soil conditions affect the value of irrigated land to a wide degree. Lands in elevated sections of the state where the growing seasons are short are not as valuable as similar lands in sections where the growing season is long.

An appurtenant water right is not taxable separately. It ■ is appurtenant to the land and bears a proportionate burden of taxation by the added taxable value which it gives to the land. (*Hale* v. *Jefferson County,* 39 Mont. 137, 101 Pac. 973.)

Manifestly it is impractical to multiply subdivisions of classification in an attempt to have hundreds of tracts of land each in its proper classification upon the basis of value; lands in the same classification necessarily will bear different values. This is recognized by section 1 of Chapter 110, Session Laws 1927, page 379, which requires that all real estate shall be separately valued for assessment and taxation purposes in the year 1927, and biennially thereafter in each odd-numbered year, with reference to the value thereof on the first Monday of March preceding the assessment, reserving the right of the county and state boards to increase or decrease the assessments for the purpose of equalization.

In Granite county irrigated lands are classified in two subdivisions, and it would seem that all of appellants' lands were taxed uniformly as to value, either in one or the other of these. That the lands in either subdivision are of uniform value is not likely. Yet it seems to have been the erroneous impression of the taxing authorities of the county that all land in a given classification must be of the same value for assessment purposes, overlooking the fundamental principle that all taxable property must be assessed at its full cash value.

Having made returns to the assessor, which he disregarded, and having failed to obtain relief from the county board, the aggrieved taxpayers had a right to appeal for redress to the ■ state board (sec. 9, Chap. 3, Sess. Laws 1923, p. 12). The state board, after notice, held a hearing at which it received documentary as well as oral evidence. The presumption is that the testimony received at the hearing held before the state board justified the order made, finding, in effect, that the assessor had placed a value upon the lands

one-third in excess of the cash value thereof. (Cooley on Taxation, 4th ed., sec. 1229; *People* v. *Millard*, 307 Ill. 556, 139 N. E. 113.) This being so, it follows necessarily that the appellants were entitled, as of right, to the reduction made.

The writ of review strikes at the jurisdiction of the board to act. If it had jurisdiction its order must stand even it if erred in the exercise of judgment. Its decision is *quasi* judicial. (*Belknap Realty Co.* v. *Simineo*, 67 Mont. 359, 215 Pac. 659.) Nor can the court go back of the record. (*State ex rel. Berger* v. *Cary*, 192 Wis. 433, 211 N. W. 284.)

Relator challenges the jurisdiction of the state board "to ▆▆▆▆ arbitrarily reduce the assessed valuation of the particular persons prosecuting the said appeals while all other persons in Granite county of an identically like character are not given any such reduction." The challenge is broader than the facts warrant. Relator alleges *inter alia* that his lands at the time of assessment were of the "same character and class" as those upon which the state board assumed to reduce the assessment for the year 1930, and "that there are in said county of Granite, Montana, a large number of other persons than affiant owning lands of the same character as those above described on which, for the year 1930, taxes for state and county purposes were levied and assessed," but he omits to allege the value of these lands. Indeed, he does not say that his land is not assessed at the value which he himself placed upon it. No fraud is alleged, nor is it averred that the board adopted a fundamentally wrong principle of assessment. (*State* v. *State Board of Equalization*, 56 Mont. 413, 185 Pac. 708; *Belknap Realty Co.* v. *Simineo*, supra.)

As has been shown, relator does not show that he has been discriminated against. But if he had shown that his land is of equal value with the lands of appellants he could not prevail upon the showing made.

A person injured by the orders of the board, "committed without fraud or malice, has in general only such remedy as the statute may afford him. And in no proceeding is one to

be heard who complains of a valuation which, however erroneous it may be, charges him only with a just proportion of the tax. If his own assessment is not out of proportion, as compared with valuations generally on the same roll, it is immaterial that some one neighbor is assessed too little; and another too much." (Cooley's Law of Taxation, sec. 1143; and see *Danforth* v. *Livingston*, 23 Mont. 558, 59 Pac. 916; *Belknap Realty Co.* v. *Simineo*, supra.)

As the supreme court of California said in *Birch* v. *Orange County*, 186 Cal. 736, 200 Pac. 647: "The decision of a taxing board as to the value of property and the fairness of an assessment constitutes a judgment of a tribunal created by law for the determination of that question, which cannot be avoided unless the board has proceeded arbitrarily, and in wilful disregard of law, with the evident purpose of imposing unequal burdens on certain of the taxpayers, or unless there is something equivalent to fraud in their action."

The state board has of necessity wide discretion in the exercise of its great powers. The authorities generally agree that its decisions, honestly arrived at, cannot be disturbed by the courts. (*Danforth* v. *Livingston*, supra; *State* v. *State Board of Equalization*, supra; *People* v. *Millard*, supra; *South Spring Ranch & Cattle Co.* v. *State Board of Equalization*, 18 N. M. 531, 139 Pac. 159; Cooley on Taxation, 4th ed., sec. 1228.)

Let us assume the board erred in judgment. Perfection in the taxation of property is not attainable, nor is it expected. It is expected and required of the taxing authorities that all property shall be taxed at its full cash value as near as may be, the fallibility of human judgment considered. It is required that there shall not be any unfair discrimination among the several counties, or between the different classes of taxable property in any county, or between individuals. It is required that all property in each class shall be assessed at its full cash value, and that the values thereof shall be equalized throughout county and state as near as may be.

If the board, when making the order complained of, knew there were similar lands of like value in Granite county, its full duty was not discharged by simply making the order. It had a further duty, which was, after giving notice (sec. 10, Sess. Laws 1923, p. 12), to reduce the values placed upon other lands in order to assess all at their full cash value to avoid discrimination; in other words, they had the further duty of equalizing the values. But if they failed in that respect, such failure would not deprive appellants of their rights.

If an appealing taxpayer has a right to the relief he demands he will be not be denied that relief on the sole ground that other taxpayers, who may be in the same situation but who have not availed themselves of their legal rights (*Belknap Realty Co.* v. *Simineo,* supra) are not granted relief. If all property is assessed at its full cash value, then the assessments will be equal as among all taxpayers.

The burden was upon relator to show that the board acted in excess of its authority but this he failed to do; on the contrary, so far as the record discloses, the action of the board is supported by the petitions of appellants filed by the appellants, and testimony offered in support thereof.

The proceeding is dismissed.

ASSOCIATE JUSTICES GALEN, FORD, ANGSTMAN and MATTHEWS concur.