# Estate of William Hinds.    Appeal of the Bank of Pittsburg.

*Guardian and ward—Loan of money to guardian without order of court —Pledge of minor's personal estate.*

Where a guardian borrows money for the alleged purpose of improving his wards' real estate and pledges personal property of his wards as security for the loan, the person lending the money will be obliged to return the property pledged if it appears that there was no order of court authorizing the loan, and that the guardian had not used the greater portion of the money borrowed in improving the real estate, but had invested it in a corporation in which he was personally interested, and the money so invested was lost.

An order of court permitting a guardian to improve his wards' real estate out of the surplus income is no authority to him to pledge the personal property of the wards for money borrowed.

Argued Oct. 28, 1897.    Appeal, No. 107, Oct. T., 1897, by plaintiff, from decree of O. C. Allegheny Co., June T., 1896, No. 132, to compel restoration of securities to minor's estate. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Petition to compel restoration of securities to minors' estate.

The petition of William Hinds alleged that his father, William Hinds, late of the county of Allegheny, died January 11, 1883, intestate, leaving to survive him a widow, Annie Hinds, and six minor children, namely, Martha (now of full age, and has been settled with by Thomas H. Chapman, guardian), William (petitioner), Jane, Nellie, Frank and George; that letters of administration were issued to Thomas H. Chapman, a nephew, and George Hinds, a brother of decedent; that the administrators filed an account, and audit was made thereon and a distribution decreed; that on April 12, 1884, Thomas H. Chapman was discharged as administrator and appointed guardian of all the minor children of William Hinds; that on the distribution of the estate of William Hinds, deceased, there was distributed to Thomas H. Chapman, guardian of William Hinds, seventy shares of the capital stock of the Merchants and Manufacturers National Bank of the city of Pittsburg; that said

bank issued to "Thomas H. Chapman, guardian of William Hinds," a certificate for the same, No. 629, shown in the guardian's statement; that William Hinds (petitioner) attained the age of twenty-one years on May 15, 1895; that Thomas H. Chapman, guardian of William Hinds, has filed his account; that on the audit of this account Thomas H. Chapman was surcharged as guardian of all the minor children of William Hinds, deceased, in the sum of about $100,000; that it is alleged that Thomas H. Chapman pledged said certificate, No. 629, to the Bank of Pittsburg, as collateral security, for the payment of a note of $4,000, drawn by said Thomas H. Chapman, guardian; that Thomas H. Chapman was and is president of the Standard Coal Company, and is and was the owner of a majority of the shares of stock of said company, and as president, and as an individual, borrowed large sums of money from the Bank of Pittsburg, foreign to the purpose of the estate of petitioner, and the investment being one in which Chapman could not legally use any portion of the assets of the estate of petitioner; that the money borrowed was not for the benefit of petitioner's estate, but for the use of Chapman and the Standard Coal & Coke Company, and that the notes of the said Chapman, guardian, are unpaid, and the Bank of Pittsburg holds possession of the said seventy shares of stock of the M. & M. National Bank, and refuses to pay petitioner any dividends on said shares of stock.

The prayers of the bill were that the Bank of Pittsburg be restrained from all sale, pledge, or disposition of said stock, and the M. & M. National Bank from transferring the same; that the Bank of Pittsburg be ordered to transfer and deliver said stock; that the Bank of Pittsburg and M. & M. National Bank account and pay for all dividends subsequent to April 1, 1895; that said stock be decreed the property of the petitioner.

Other facts appear by the opinion of HAWKINS, P. J., which was as follows:

In 1884, Thomas H. Chapman applied, as guardian of the minor children of said decedent, to the Bank of Pittsburg, for a loan, representing that the proceeds were intended to be used in the improvements which this court had authorized, of his wards' real estate; and that bank, upon the strength of the rep-

resentations thus made by the guardian, without examination of the record of this court, made the loan, taking in pledge, stock of this bank owned by the wards. Had examination of the records of this court been made, it would have appeared that the guardian had asked authority to make improvements on certain real estate of his wards to the extent of $5,000, " with the receipts and revenues arising from the estate of said minors during the current year, together with the funds already in the hands of your petitioner, will afford a sufficient sum of money for to make said improvements," and that an order had been made on the petition authorizing such improvements.

An additional loan was afterwards (1888) made in like manner; and the record showed that the guardian had asked authority to make improvements on certain other real estate of his wards, to the extent of $5,000 ; that he had " belonging to said wards ample funds available to pay for the erection of said buildings ; " and that an order had been made on this (second) petition, authorizing such improvement to be made. Renewal notes were given in these instances from time to time, fluctuating in amounts ; sometimes increased and sometimes diminished, as shown by the attached schedule, until the loans seem to have been reduced to $2,000. An application was then made for a loan of $20,000, for an alleged purpose, similar to that of the former loan. It was not asked upon the strength of an order, alleged to have been made, authorizing an improvement, but upon an allegation that because similar orders had been made heretofore this court would make another order; and upon the strength of this statement the loan was made ; stock of the Merchants and Manufacturers National Bank being substituted for that of the Bank of Pittsburg, as security. The promised order of this court was never made, nor even applications made therefor. Two thousand dollars of the proceeds of this loan went in satisfaction of the balance of the former loans, which the guardian now alleges had gone in fact into the improvement authorized; and $18,000 was invested by the guardian in a private corporation, of which he was the president.

When the guardian filed his final account he claimed credit for this loan; and exception was taken to this and other items. This court suspended action on this item until liability for the loan and pledge, as between the estate and bank, should be

ascertained; and surcharged the guardian on the other items with an amount exceeding $100,000, and judgment was entered thereon as against the guardian and his sureties. A petition was shortly afterwards presented to court, on behalf of the succeeding guardian, setting forth that these sureties had made an offer of compromise of these judgments, and this offer being in the petitioner's opinion, after investigation, advantageous, asked that authority be given to accept it; whereupon the court granted an order with the following qualification:

"The compromise herein authorized be a complete and effectual release and discharge of each of said sureties, making such payment from all liability upon judgments at Nos. 762, 763 and 764, April term, 1896, and also to be a full release from all further liability upon a bond on which said judgments are based; except that in event of a recovery being had by William Hinds against the Bank of Pittsburg, of certain stocks in proceedings instituted, and now pending in this court at No. 132, June term, 1896, or a recovery in any similar suit hereafter instituted by or on behalf of the other beneficiaries of said bond, the liability of said sureties, as to the subject-matter of said proceeding or proceedings, shall be in no way compromised, affected or discharged; and the carrying into effect of said compromise, or compromises, to be in no way construed as creating or admitting any liability on the part of said sureties to the Bank of Pittsburg, or others, by reason of the exceptions herein contained."

The present proceeding was instituted with a view to compel the retransfer of these stocks to the credit of the petitioners; and the question submitted to the court is whether said loan and pledge were a valid exercise of the authority of the guardian. Both the Bank of Pittsburg and the Merchants' and Manufacturers' Bank were made parties respondent. It is conceded that if the loans and pledges in this case were made with notice of the breach of trust, the prayer of petititioner must be granted; but it is insisted that there was neither breach of trust nor notice. These are the issues, and in respect of both the decision must be in favor of petitioner.

1. The guardian had no power by virtue of his office, nor of any order of court, nor was there any occasion to borrow. It may be conceded that this guardian had power to sell his wards' personal estate for purposes incidental to his trust, as

with a view to make other more advantageous or safer investments; but what reason could he have to borrow? Certainly for no ordinary purpose. The reasons which gave rise to the rule, that a power to sell implies a power to mortgage, do not exist here. These powers are simply alternative modes to raise funds for the payment of debts used in the administration of estates by executors or administrators. A guardian has ordinarily nothing directly to do with the payment of debts of an estate; that is a peculiar function of the administrator; while his function is to receive, hold and invest the "surplusage," he has no power to create new debts (McCreery's Appeal, 31 P. J. L. 230), consume any part of the principal, nor change the course of descent by converting personal into real or real into personal estate, without the sanction of the orphans' court, but must maintain in its integrity and character the whole corpus. In the exercise of powers of sale, abuses are unavoidable. Thus in this very estate the guardian sold a large number of valuable bank stocks with a view to relieve himself of encumbered real estate, which his wards were afterwards compelled to accept, because of his insolvency. Such instances as this are fortunately of rare occurrence. Necessity compels their endurance, but opportunities and temptations to abuse will be greatly increased without any occasion, by concession to guardians of the power to borrow. Injudicious, improvident or fraudulent transactions will happen, and the wards' property, pledged at an undervalue, be forfeited for want of redemption when sale at the market value in the first instance would have averted the loss; and difficulties in fixing the liability of guardians in such cases are increased to the wards' great disadvantage. These are hazards which there is no reason to assume, and can only be prevented by the denial of any right to borrow, unless with the prior sanction of the orphans' court. The occasions are so rare in the course of guardianship, in which borrowing becomes necessary or advisable, either on security of real or personal estate, that such a rule can cause no inconvenience. The guardian cannot engage in active business; his duty is to "hold" and "invest." There is no reason why his power in respect of borrowing on security of personalty should differ from his restricted power over realty. There was not only no authority given by this court to borrow, but an implied prohibition. The decree

wàs an adjudication, (*a*) that petitioner's averment of sufficient available assets belonging to the estate with which to make the improvements was true; and (*b*) an appropriation of those assets to that purpose, which neither the guardian, nor those who claim under him can now deny.

As no modification of this decree was ever asked or made, it must be conclusively presumed that these funds were used as decreed. Power to convert a ward's personal into real estate by making valuable improvements ought not to be assumed without sanction, because it affords the guardian an opportunity to act independently of court, whose officer he is, alter the course of descent or improve the ward out of his own estate, contrary to the policy of the law. Where improvements have been made judiciously, the court may, of course, in its discretion, ratify them: Miller's Estate, 1 Pa. 326; Eberts v. Eberts, 55 Pa. 110; Kilpatrick's Appeal, 113 Pa. 46. But the evidence here fails to show that more than the amount appropriated by this court was needed in making the improvements. Eighteen thousand of the twenty thousand dollars last borrowed was traced distinctly into another investment and credit therefor stricken from the guardian's final account as illegal. What became of the other money borrowed has not been sufficiently shown. But the inconsistency of this transaction with the guardian's sworn statement, and his concealment of it from this court for so long period, taken in connection with his waste of over $100,000 of trust funds that have been placed in his care, are pregnant with suggestion of suspicion. Done without and in defiance of authority, without occasion, and without apparent benefit to the estate, it was a palpable breach of trust.

2. Those who deal with trustees are presumed to do so with notice of the legal limitations of their power; and when they go outside of this, they do so at their own risk. Absolute owners may do as they please with their property so long as they do not infringe the laws of public policy; but trustees, whether bankers, attorneys, guardians or others, act in a representative character, and are limited by the purpose of the trust which each holds. Administrators, executors and guardians are quasi-public trustees, with duties prescribed by law, which every one is obliged to know, and notice of whose character is notice of the limitation of their power. The application of this principle

is aptly illustrated by the case of Marshall's Estate, 138 Pa. 285. An executor, without authority, offered in pledge stocks belonging to his trust to a bank with a view to secure a loan, the proceeds of which he declared were intended to be used in the continuance of the business in which his testator had been engaged. Trusting to these representations, without further inquiry, the bank made the loan; and proceedings having been thereafter taken to compel restoration of the stocks, it was held that there was enough to put the bank on inquiry, which would have led to a knowledge of the facts; and that it was therefore a party to the breach of trust. " The absence of any reference in the will," said the court, " to the firm of James Marshall & Company, ought of itself to have excited inquiry. But there is no evidence that they even examined the will, or made any inquiry of the coexecutors, or colegatees of James Marshall, Jr., or consulted an attorney in reference to the matter.

" They appeared to have trusted alone to the representations of James Marshall, Jr., and have themselves to blame for their credulity. It would be simply a perversion of justice to hold that in such circumstances, this petitioner, without any default on her part, should lose her beneficial interest in these stocks." An order of restoration was accordingly made.

The facts are substantially those. Respondent dealt with Mr. Chapman, in his representative character as guardian, and with stocks known to belong to his wards. It having been informed that the purpose was to improve the wards' real estate, respondent was bound to know that the guardian had no power to improve without the sanction of this court; and when told that the court had authorized such improvements, was bound in the exercise of ordinary prudence to inquire into the extent of this authority. " Every man is bound," said the Court in Messinger v. Kintner, 4 Binn. 97, " to take notice of the record which is the foundation of his title. If they look into the title at all, the decree of the orphans' court stares them in the face at the first glance, and seeing the decree, they must take notice at their peril, of the proceedings on which it is founded." So, on the same principle here, if respondent had examined the record which, as already seen he was bound to do, it would have found that not only was there no authorization, nor occasion for a loan, but an implied prohibition. In making the last of the

series of loans, they did not even wait, but took the risk of an anticipated order, for improvement. The specific purpose in making all these loans was to provide means for carrying out alleged orders of court, made or anticipated, for the improvement of the wards' real estate. The attention of the respondent having been thus specifically directed, made the duty of inquiry the more imperative. If the guardian had offered for discount an ordinary promissory note, the bank would doubtless have made independent inquiry, as in the usual course of business, into the responsibility of the indorser; and had at least as much reason to do so here, in respect to the responsibility of this trust estate : Bedford Bank v. Stever, 169 Pa. 574.

The respondent, having thus had notice that the guardian was acting without authority, and without occasion for a loan, was a party to his breach of trust, and became answerable to petitioner for the loss which resulted.

*Error assigned* was decree of the court.

*D. T. Watson*, with him *George P. Hamilton*, for appellant. —A guardian is by the general nature of his trust entitled to the possession and care of the personal estate and the rents and profits of the real estate of his ward. Though it is not in the ordinary course of the guardian's duty to sell the personal property of his ward, yet he has the legal right to do it, for it is entirely under his control and management, and he is not obliged to apply to the court for direction in every particular case. He may invest, call in, and reinvest, change and otherwise dispose of the personalty, as the exigencies of the trust and his judgment may require. As to the realty, he may take possession of it and work it himself, or may lease it during the guardianship. He cannot convey the realty absolutely, without special authority of the orphans' court, because the nature of the trust does not require it, and because the statutes so provide. The question as to the exercise of the guardian's power, in thus disposing of his ward's personal estate, arises between him and his ward on final settlement, but a stranger, dealing with the guardian, justly and fairly is not liable afterwards to have his title questioned : 3 Rhone's Orphans' Court Practice, 233 ; Field v. Schieffelin, 7 Johnson's Chancery, 150 ; Wood-

ward v. Donally, 27 Ala. 198; Wallace v. Holmes, 9 Blatch-
ford, 67; Humphrey v. Buisson, 19 Minn. 182; Lancaster v.
Dolan, 1 Rawle, 231; Rowley v. Towsley, 53 Mich. 329;
Edmonds v. Morrison, 5 Dana, 223; Beam v. Froneberger, 75
N. C. 540; Odd Fellows Savings Bank's App., 123 Pa. 356.

It will be found on an inspection of the case of Bayard v. The
Bank, 52 Pa. 232; Garrard v. Pittsburg & Connelsville R. R.,
29 Pa. 154, that the assets of the estate were being used for the
individual purpose of the fiduciary.

*Ed. B. Scull*, with him *George C. Wilson* and *Wm. D. Evans*,
for appellees.—The loans made by the bank of Pittsburg to the
guardian and the pledges taken therefor were with notice of a
breach of trust: Colebrook on Collateral Securities, sec. 76;
Jones on Pledges, sec. 481; Jaudon v. Nat. City Bank, 8
Blatch. 431.

The representations that the money was to be used to improve
the wards' real estate given in the manner disclosed by the evi-
dence was sufficient to put the bank on inquiry : Oakley v. Oak-
ley, 3 Demarest, 140; Bond v. Lockwood, 33 Ill. 223; Flade's
Minors, 40 Leg. Int. 131; Broadus v. Rosson, 3 Leigh. 12;
Nicholls v. Peak, 12 N. J. Eq. 69.

The bank never paid or offered to pay any part of the sur-
charge of the guardian.  The person who invokes the doctrine
of subrogation must come into court with clean hands : Sheldon
on Subrogation, sec. 44; Milwaukee & Minnesota R. R. v. Sout-
ter, 80 U. S. 517; 24 Am. & Eng. Ency. of Law, 193; German
Bank v. U. S., 148 U. S. 573; Rowley v. Towsley, 53 Mich.
339; Beam v. Froneberger, 75 N. C. 540.

PER CURIAM, November 8, 1897 :
There is nothing in this record that requires a reversal or
modification of the decree.  The questions presented were care-
fully considered and correctly disposed of by the learned presi-
dent of the orphans' court.  On his opinion the decree is
affirmed and appeal dismissed at appellant's costs.