ALEXANDER ET AL., APPELLANTS, v. WINDSOR ET AL., RESPONDENTS.

(No. 7,762.)

(Submitted June 2, 1938. Decided July 22, 1938.)

[81 Pac. (2d) 685.]

Messrs. *Rockwood Brown & Horace S. Davis, Mr. Melvin N. Hoiness* and *Mr. Franklin S. Longan,* for Appellants, submitted an original and a reply brief; *Mr. Davis* argued the cause orally.

156

*Messrs. J. F. & M. J. O'Connor,* and *Mr. David B. Fitzgerald,* for Respondents, submitted a brief; *Mr. M. J. O'Connor* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

J. Newton Alexander died leaving an estate which was probated in Musselshell county. A part of his estate consisted of 842 ewes and 30 grade-bucks described in the decree of distribution as "about one thousand head of sheep, bucks and ewes." The decree of distribution distributed an undivided one-third of such property to Gertrude Germaine, the widow, and an undivided two-thirds to five minor children, the plaintiffs herein. Germaine Alexander was duly appointed by the Musselshell district court and qualified as the guardian of the persons and estates of the minor children before the decree of distribution was entered. Germaine Alexander was also the duly appointed and qualified administratrix of the estate of J. Newton Alexander.

After the decree of distribution was made and entered, and on January 18, 1933, defendants entered into an agreement in writing with "Mrs. J. N. Alexander, administrator," who is conceded to be Germaine Alexander, under the terms of which they sold to her 130 white-faced Hereford calves, which, according to the agreement, were to be fed hay and grain and cared for by defendants until April 1, 1933, at which time they were to be delivered to Mrs. Alexander at Springdale. According to the agreement, the 842 ewes and 30 grade-bucks were to be given in exchange for the calves. The ewes and bucks were to be delivered to defendants at Grey Cliff on or about January 25, 1933. They were actually delivered on January 23, and some still remained in the possession of defendants at the time of the trial in the court below; others had died and some had been sold by defendants.

On April 13, 1933, defendants entered into another written agreement with Mrs. Alexander, administratrix, whereby the calves covered by the agreement of January 18th were accepted as a down payment of $2,000 on 175 white-faced Hereford cows and six purebred Hereford bulls, reciting that there was a balance of $4,575 due, which, when deposited to the credit of

defendants at the Montana Livestock Loan Company of Helena, the defendants would relinquish all right and title to the cattle and convey them to Mrs. Alexander. The calves were never delivered to Mrs. Alexander but were at all times retained by and in the possession of defendants. On or about April 13, 1933, the 175 white-faced Hereford cows and six purebred Hereford bulls were delivered by defendants to Mrs. Alexander. The cows and bulls at the time of delivery to Mrs. Alexander, and at the time of the agreement of April 13, 1933, were covered by a mortgage in favor of the Montana Livestock Loan Company of Helena, as partial security for notes aggregating the sum of $85,000. The sum of $4,575 was never paid to defendants, and in October or November, 1933, the Montana Livestock Loan Company foreclosed its mortgage on the cows and bulls, the sale under foreclosure netting less than $4,575, all of which was paid to the mortgagee, and, in consequence, Mrs. Alexander neither individually nor as guardian received anything from the sale of the cattle. ·In January, 1935, Mrs. Alexander, in behalf of the minors as their guardian, demanded the possession of the sheep as the owners in common of an undivided two-thirds interest therein; this was refused.

This action was instituted by J. J. Lanagan, as guardian *ad litem*, to recover damages for the conversion of the sheep. After issues were joined, the cause was tried to the court sitting without a jury. The above facts were agreed to at the trial. It was further agreed that on March 9, 1933, Germaine Alexander filed a petition in the district court of Musselshell county, in which she recited that she individually and as guardian of the minors entered into the agreement with defendants whereby she traded the sheep for the calves. She stated in the petition that it was her belief and opinion that it was for the best interests of the minors and of herself individually that the exchange be made. She further recited therein, in substance, that it was her desire to purchase an additional 170 head of calves in order to stock a ranch which she had purchased, and which was adapted properly to range and care for 400 head of cattle; that it was her purpose to borrow money from the

Regional Agricultural Credit Corporation with which to buy the additional 170 head, and that she had already applied for the loan, proposing to give as security a mortgage on the 130 head obtained from defendants, as well as on the 170 head thereafter proposed to be purchased. She asked approval of her action in exchanging the sheep for the calves, and of her proposal to buy 170 more head and mortgage them all for the proposed loan of $4,500.

Thereafter, and on March 20, 1933, the court entered an order ratifying and approving the action of the guardian, Germaine Alexander, in effecting the exchange of the sheep for the calves, and authorizing the purchase of 170 additional head and mortgaging them all for a loan of $4,500.

On June 28, 1933, the guardian filed another petition in the same court, reciting that defendants were unable to deliver to her the 130 head of calves at the time delivery was called for, and that it was agreed that in lieu thereof there should be delivered to her 175 cows and six bulls, and that there should be paid to defendants the further sum of $4,500, such sum to be borrowed upon the security of the 175 cows with calves, and six bulls; that she was still desirous of borrowing $4,500 from the Regional Agricultural Credit Corporation of Spokane, for the purpose of paying for the cows and bulls, and that such action would be for the best interests of the minors and herself individually. She requested an amendment of the order of March 20, 1933, so as to approve her action in exchanging the sheep for the cows and bulls. This petition was set for hearing. On July 19, 1933, the court made an order ratifying and approving her action. The cows and bulls were delivered to her on or about April 13, 1933. It was stipulated that the value of the sheep, when delivered to the defendants, was $2,000.

The court made findings of fact in accordance with the foregoing agreed facts, and then found that no proof had been made of any offer by plaintiffs to restore to defendants a two-thirds interest in the cattle or the reasonable value thereof as a condition precedent to a disaffirmance of the exchange. It concluded as a matter of law that the transactions were voidable

and that plaintiffs could not disaffirm the transactions and retain the benefits thereof. It awarded judgment for defendants.

The vital point in the case is whether the various transactions above recited divested the minors of their two-thirds interest in the sheep. Plaintiffs contend that the attempted trade of the sheep for the calves did not divest them of their interest in the sheep, because, while a guardian may sell the personal property of his ward, he may not consummate a trade or exchange.

Ordinarily, the power to sell does not include the power to exchange. (See cases listed in note in 63 A. L. R. 1004, subd. II.) Our statute (sec. 10428, Rev. Codes), in addition to granting power to sell, also authorizes the court to make orders needful for the disposition of the estate and effects of the ward (sec. 10443). The power of disposition is sometimes held to include a power of exchange. (63 A. L. R. 1004, subd. III.)

Under the facts of this case, we need not determine whether our statutes authorize a guardian to exchange the ward's property for other property, such as was attempted in relation to the calves. Under the facts here, the attempted trade of the sheep for the calves was rescinded by mutual consent. The guardian, in petitioning the court the second time, recited the substance of the agreement to trade the sheep for the calves, and then alleged that "upon calling upon the said Ebert Sheep Company for delivery of the said calves so bargained for, the said company was unable to make delivery of the said calves, and in lieu thereof it was agreed that there should be delivered to your petitioner, and there was so delivered to her, 175 cows and six bulls."

The order of the court recited: "Upon reading and filing the verified petition of Germaine Alexander, guardian of the persons and estates of the above named minors, and it appearing therefrom that the action of the said guardian, as therein recited, in exchanging 872 head of sheep and grade-bucks for 175 cows and six bulls, and agreeing to pay $4,500 in addition to the said sheep and bucks in full payment for said cows and bulls, was and is for the best interests of the said minors and their estates. It is

hereby ordered that said action by the said guardian be and is hereby ratified and approved.

"It further appearing from the said petition that it will be for the best interests of said minors and their said estates to borrow the sum of $4,500 and $1,350 discretionary additional loan, securing such loan by a chattel mortgage upon the said cows and bulls, such loan to be obtained upon application of said guardian to the Helena Branch of the Regional Agricultural Corporation of Spokane, Washington, it is hereby ordered that the said guardian be and she is hereby authorized to obtain such loan for the purpose of completing payment for said cows and bulls, for the term of one year with interest at the rate of 6½ per cent, per annum; and it is further ordered that the order of the court heretofore made on March 20, 1933, be and the same is amended and modified accordingly."

Hence, it is apparent that the agreement to trade the sheep for the calves was abandoned by the mutual consent of the parties, and what was actually consummated was a trade of the sheep for the cows and bulls and the assumption of an indebtedness of $4,500 and purported authorization of a mortgage upon the cattle in order to raise the bulk of the purchase price.

As we view the case, it narrows down to the question of the power of the court to authorize the guardian to trade the sheep for the cows and bulls and to impose a financial obligation upon the minors to pay the difference at a future time. Such a transaction has been condemned by this court as early as 1903, in the case of *Davidson* v. *Wampler*, 29 Mont. 61, 71 Pac. 82, where the court said: "We must, therefore, look to the Probate Practice Act in force at the date of the order to determine what power the court had in the premises. Under this Act the court had ample power to order a sale of the ward's estate upon application of the guardian, when the necessary jurisdictional facts were made to appear, for the purpose of raising funds to pay debts or to support and educate the ward. (Comp. St. 1887, Div. 2, secs. 367, 369, 370, 376, et seq.) But nowhere do we find any provision granting the power, either in terms or by implication, authorizing the incumbrance of the property or

the incurring of debts for the benefit of the ward for any purpose. It must follow, therefore, that the decree of the district court was wholly unauthorized.''

The pertinent parts of our statutes are the same today as when the *Davidson Case* was decided. Under the decision in that case, the court's attempted approval of the trade of the sheep for 170 cows and six bulls, and the incurring of a debt by the minors was unauthorized.

Whether we would reaffirm the declaration in the *Davidson-Wampler Case* to the effect that there is no authority on the part of the court to sanction the incurring of a debt for the benefit of the ward for any purpose, we need not now decide. We think the *Wampler Case* was properly decided under the facts there involved, and that it has application here. Other courts have taken the same view under statutes not materially different from ours. (*Harris* v. *Preston,* 153 Ky. 810, 156 S. W. 902; *Scott* v. *Reeves,* 131 Ala. 612, 31 So. 453; *In re Guardianship of Steadman's Estate,* 64 S. D. 156, 265 N. W. 596; *Ward* v. *Jossen,* 218 Ala. 530, 119 So. 220; *Wilkinson* v. *Wright,* 228 Ala. 243, 153 So. 204, 205; *National Surety Co.* v. *Manhattan Mortgage Co.,* 185 App. Div. 733, 174 N. Y. Supp. 9.)

The order purporting to approve of the transfer of the sheep for the cows and bulls being void, no title thereto passed to the defendants. (*Washabaugh* v. *Hall,* 4 S. D. 168, 56 N. W. 82; *De La Montagnie* v. *Union Ins. Co.,* 42 Cal. 290; *Gentry* v. *Bearss,* 82 Neb. 787, 118 N. W. 1077; *Hardy* v. *Citizens' Nat. Bank of Keene,* 61 N. H. 34; *In re Hinds' Estate,* 183 Pa. 260, 38 Atl. 599; *Bohanan* v. *Riddle,* 145 Okl. 301, 293 Pac. 1031.)

The minors have never been legally divested of their two-thirds interest in the sheep, which two-thirds interest was conceded to be worth $1,333.33. Concededly the title to the cows and bulls never passed to plaintiffs. They received no part of the proceeds from the foreclosure sale. No benefits were received by them of any kind or character, and in consequence, if ever there must be a restoration of benefits under a void transfer, as here, nothing came into the hands of these plaintiffs which must be restored to defendants.

Accordingly, the judgment is reversed and the cause remanded with direction to enter judgment for plaintiffs in the sum of $1,333.33 together with interest at the legal rate.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.