LAURENCE S. CARLSON, as Trustee in Liquidation of Alex Shulman Co., a corporation, Plaintiff and Respondent, v. FLATHEAD COUNTY, et al., Defendants, and STATE OF MONTANA, et al., Movants and Appellants.

No. 9313.
Submitted May 9, 1955. Decided December 22, 1955.
Rehearing Denied February 20, 1956.
293 Pac. (2d) 279.

Arnold H. Olsen, Atty. Gen., Hubert J. Massman, Asst. Atty. Gen., H. O. Vralsted, Sp. Asst. Atty. Gen., Lyman J. Hall, Deputy Asst. Atty. Gen., for appellants.

Walchli, Korn and Warden, Edward C. Schroeter, County Atty., Kalispell, for respondent.

Mr. Vralsted and Mr. Daniel J. Korn argued orally.

MR. JUSTICE BOTTOMLY:

This is a companion case to Carlson v. Flathead County Appeal No. 9262, 293 Pac. (2d) 273. Respondent's motion to dismiss the appeal is denied.

The State of Montana and the state board of equalization here appeal from the judgment entered against them in the district court of Flathead County on October 14, 1952, and from an order filed on April 10, 1953, denying appellants' motion to vacate the aforesaid judgment.

*The facts.* The Alex Shulman Company, a foreign corporation, owned real estate, the improvements thereon and also certain personal property in Flathead County, Montana, on the first Monday in March, 1950, all of which the county assessor of Flathead County assessed for the year 1950.

The Alex Shulman Company, being dissatisfied with the assessment so made, filed its application for a reduction of the assessed valuation of its property with the board of county commissioners of Flathead County during the time when, under the law, the said board was sitting as the board of equalization of Flathead County. After hearing had, the then county board of equalization of Flathead County denied the application of the Alex Shulman Company *in toto* and from such decision the Alex Shulman Company then appealed to the state board of equalization.

The state board of equalization ordered and noticed a hear-

38

ing to be held at Kalispell, Montana, and thereafter following a full hearing on the appeal the state board of equalization made and entered its order reducing the assessed valuation of the land in the sum of $31,709 and reducing the assessed valuation of the improvements thereon in the further sum of $25,000, making a total reduction in the assessed valuation of the property of the Alex Shulman Company for the year 1950 of $56,709; said order was spread on and became the tax record of Flathead County as provided by R.C.M. 1947, section 84-4004, and on the reduced assessed valuation as so determined and ordered by the state board of equalization the tax for the year 1950 was levied and the county treasurer charged therefor as provided by R. C.M. 1947, section 84-4007.

On or before November 30, 1950, the Alex Shulman Company elected to and it did pay the sum of $4,926.41 to the county treasurer of Flathead County, being the first one-half of its said taxes as so determined on the assessed valuation as fixed by the state board of equalization for the year 1950.

December 6, 1950, the Alex Shulman Company brought an action in the district court of Flathead County against the state board of equalization seeking a writ of mandate to compel such state board to further reduce the assessed value of such property. An amended alternative writ of mandate issued directing the state board to reduce such assessed valuation. After denial of its motion to quash the writ the state board and the State of Montana made answer and then filed in this court proceedings seeking a writ to be directed to the district court of Flathead County and to the Honorable Dean King, judge thereof, to prohibit them from proceeding further with the aforesaid mandamus action other than to quash the writ of mandate theretofore issued and dismiss the action.

Following a hearing had on such application, this court on July 20, 1951, issued its writ prohibiting the district court of Flathead County from proceeding further in the mandamus action there instituted. See State ex rel. Goza v. District Court, decided July 20, 1951, 125 Mont. 296, 234 Pac. (2d) 463.

January 26, 1951, the respondent Carlson, as trustee for Alex Shulman Company, assuming to proceed under the provisions of R.C.M. 1947, section 84-4502, commenced the instant action in the district court of Flathead County, seeking judgment against Flathead County, a political subdivision of the State of Montana and the county treasurer thereof, for the sum of $4,926.41, being the sum the Alex Shulman Company had paid to said treasurer for one-half of the tax so paid for the year 1950, or such portion thereof as has been illegally levied and collected. This suit for refund was filed while the mandamus action was pending in and undetermined by the Court.

December 1, 1951, the State of Montana and state board of equalization filed their petition to intervene together with their proposed complaint in intervention in the instant tax refund case in said district court. Both the petition for intervention and the complaint in intervention clearly disclosed the interest of both the State of Montana and the state board of equalization in the action.

January 8, 1952, the district court filed its order granting the State of Montana and the state board of equalization the right to file their complaint and to intervene therein, and on or about January 15, 1952, the interveners filed their complaint in intervention. January 19, 1952, the State of Montana and the state board of equalization interposed a demurrer to the complaint of the plaintiff Carlson, as trustee of Alex Shulman Company. The record does not disclose that the district court ever acted on this demurrer.

February 1, 1952, plaintiff filed its motion to strike the complaint in intervention of the State of Montana and the state board of equalization, alleging *inter alia* that such complaint in intervention fails to state facts sufficient to entitle said petitioners to intervene; that said complaint was never verified and for such reasons is insufficient in law and that neither of petitioners is a proper party to the action.

June 9, 1952, the State of Montana and the state board of equalization noticed for hearing the motion to strike their com-

plaint in intervention, and on August 13, 1952, the district court made and filed its order granting plaintiff's motion to strike the complaint in intervention of the State of Montana and the state board of equalization.

While the demurrer of the State of Montana and the state board of equalization to plaintiff's complaint was pending and during the time within which the State of Montana and the state board of equalization could appeal and on October 8, 1952, the board of county commissioners of Flathead County passed a resolution wherein the said board of county commissioners *reduced the valuation of the property* of the Alex Shulman Company, a corporation, for the year 1950, by several thousands of dollars, and thereby reduced, remitted, diminished, released and cancelled the valuation and the percentage assignment, found, determined and finally fixed by the state board of equalization and the tax determined thereon, said resolution reciting among other things that the county commissioners deemed it to be the best interest of the county to settle the litigation by reducing the valuation of the property of the Alex Shulman Company.

October 9, 1952, a stipulation, as follows, was executed and filed in said tax refund action:

"Stipulation

"Pursuant to the action taken and resolution adopted by unanimous vote of the Board of County Commissioners of Flathead County, Montana, at a regular meeting of the Board held in the Commissioners Room at the Courthouse in Kalispell, Flathead County, Montana, *on the 8th day of October, 1952* [emphasis supplied], by which resolution and action said Board of County Commissioners, representing the defendant, Flathead County, Montana, agreed upon a settlement of the above entitled action for the sum of $3,107.97, and authorized the County Attorney, as legal representative of said defendants, to stipulate for the entry of judgment in favor of the plaintiff in · the above amount;

"*And the County Attorney being fully advised as to the*

*law and the facts in the matter, and approving the action so taken by the Board of County Commissioners, and deeming such action and settlement to be in the best interests of Flathead County* and all parties concerned; [emphasis supplied].

"It is hereby stipulated and agreed by and between the parties to the above entitled action that the Court render and enter judgment in favor of the plaintiff in the sum of $3,107.97, but without interest or costs, and that said judgment expressly authorize the County treasurer of Flathead County, a defendant named herein, to refund and forthwith pay to the plaintiff the said sum of $3,107.97 out of the tax protest fund in the hands of the County Treasurer of Flathead County, Montana.

"Dated this 9th day of October, 1952.

> "Walchli, Korn & Warden
> "Attorneys for Plaintiff
> "Edward C. Schroeter
> "County Attorney and Attorney for Defendants.

"Filed: October 9, 1952."

On October 14, 1952, the court made and filed the following purported judgment:

### "Judgment

"A written Stipulation having been entered into and filed on behalf of the parties to the above entitled action authorizing the entry of judgment herein in favor of the plaintiff in the sum of $3,107.97, and said matter being presented to the Court, and each of the parties being represented in Court by their respective counsel;

"It is hereby ordered that the plaintiff do have and recover judgment against the above named defendants herein for the sum of $3,107.97, but without any interest or costs herein, and the Treasurer of Flathead County, State of Montana, is hereby expressly authorized to immediately pay to the above named plaintiff the sum of $3,107.97, out of the tax protest funds in the hands of said County Treasurer, and that upon such payment this judgment shall be deemed satisfied in full.

42

"Done in Open Court this 14th day of October, 1952.

"Dean King

"District Judge

"Filed October 14, 1952."

On or about the 15th day of October 1952, the plaintiff entered the following endorsement on the Judgment Docket opposite said Judgment, to-wit:

"This Judgment satisfied in full this 15th day of October, 1952.

"Laurence S. Carlson, Trustee

by Dan J. Korn, his attorney."

The district court upon the presentation to it of the above quoted stipulation entered its above judgment of October 14, 1952, from which this appeal was taken.

The questions here presented are:

(1) Did the board of county commissioners of Flathead County have the power, authority and jurisdiction to execute such a resolution?

(2) Was the resolution legal and valid?

(3) If the resolution and stipulation were illegal and void, was the judgment founded thereon also illegal and erroneous, as well as the satisfaction of such a judgment?

(4) Does time legalize an illegal act?

We answer questions (1), (2) and (4) in the negative. We answer question (3) in the affirmative.

The board of county commissioners were not sitting as a county board of equalization on October 8, 1952, the date on which they passed said resolution which reduced the assessed valuation of the Alex Shulman Company property, and thereby reduced, remitted, compromised and cancelled and extinguished the assessed tax of the Alex Shulman Company for the year 1950. It is to be remembered that the state board of equalization had already found, fixed and determined the taxable valuation of this property on which the tax was figured and set and determined and levied for the year 1950 in the sum of $9,-

852, of which the State of Montana had levied $614.96 for state purposes as provided by section 2, Chapter 25, Laws of 1949.

The Montana Constitution, section 15 of Article XII, provides in part, "The board of county commissioners of each county shall constitute the county board of equalization. The duties of such board shall be to adjust and equalize the valuation of taxable property within their respective counties, *and all such adjustments and equalizations may be supervised, reviewed, changed, increased or decreased by the state board of equalization. * * *"* (Emphasis supplied.)

R.C.M. 1947, section 84-403, provides in substance that if any taxpayer is aggrieved at the true and full value placed on his property by the county assessor, he shall have the right to appeal to the *county board of equalization,* and also to appeal from the *county board of equalization* to the state board of equalization, *whose findings shall be final,* except to the right of review in the proper court. Under the provisions of section 15 of Article XII, supra, and section 84-403, supra, sections 84-404 and 84-4004, the state board of equalization is granted the power and authority and final determination to find and fix the value for taxation of property in every county in the state, when an appeal to it is perfected, and when the state board of equalization has made its determination the county board of commissioners is bound thereby. Compare State ex rel. State Board of Equalization v. Jacobson, 107 Mont. 461, 463, 86 Pac. (2d) 9.

Section 11 of Article VIII of our Constitution in part provides that, "The district courts shall have original jurisdiction in all cases * * * which involve * * * the legality of any tax, impost, assessment * * *."

Section 39 of Article V of our Constitution provides, as far as pertinent here, that, "No obligation or liability of any person, association or corporation, held or owned by the state * * * shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislative assembly;.

nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury.''

In Sanderson v. Bateman, 78 Mont. 235, 253 Pac. 1100, 1103, speaking for an unanimous court and of the application of section 39 of Article V, above, Chief Justice Callaway said, ''Among the county's duties, as an arm of the sovereignty, is the collection of the state's share of *ad valorem* taxes. The state was entitled to a share in the original taxes due from plaintiff's predecessor in the years 1920, 1921, and 1922, and the interest thereon * * *. The state could not remit, release, nor diminish those taxes directly or indirectly, and what the Constitution prohibits the state from doing it cannot authorize its creature, the county, to do. The manifest intent of section 39 of Article 5 is to prohibit the county, a political subdivision of the state for governmental purposes, from doing the things forbidden when the state cannot do them.'

In State ex rel. Goza v. District Court, 125 Mont. 296, 234 Pac. (2d) 463, 465, this court said, ''The state board of equalization in a hearing on appeal from the county board acts in a quasi-judicial capacity, and the presumption obtains that its findings were justified by the evidence taken at the hearing. State ex rel. Schoonover v. Stewart, 89 Mont. 257, 297 Pac. 476; and International Business Machine Corp. v. Lewis and Clark County, 111 Mont. 384, 112 Pac. (2d) 477.

''In such a proceeding a court will not substitute its judgment for that of the taxing officials and an over-valuation, honestly made, will not be disturbed. International Business Machine Corp. v. Lewis and Clark County, supra; Johnson v. Johnson, 92 Mont. 512, 15 Pac. (2d) 842.''

A county is only a political subdivision of the state and the boards of county commissioners have only such power, authority and jurisdiction as is conferred upon them by law. See Lewis v. Petroleum County, 92 Mont. 563, 565, 17 Pac. (2d) 60, 86 A.L.R. 575. Boards of county commissioners have no power, authority or jurisdiction under the Constitution nor statutes to reduce, compromise, remit, release, cancel, diminish or extin-

guish any state tax, obligation or liability, nor any assessed tax valuation or percentage assignments of property after the same has been found, determined and fixed by the state board of equalization. See R.C.M. 1947, sections 84-403, 84-404.

Section 10 of Article XII of our Constitution provides, in part, that *"All taxes levied for state purposes shall be paid into the state treasury * * *."* (Emphasis supplied.) This court in Mutual Life Insurance Co. v. Martien, 27 Mont. 437, 71 Pac. 470, 471, said "* * * the constitution providing, in section 10 of article 12, that all taxes levied for state purposes shall be paid into the state treasury. The only reasonable construction of the latter section of the constitution, in connection with a provision that the county treasurer shall be the collector [section 5 of Article XVI], is that the collector shall collect, and then pay into the state treasury, *all taxes levied for state purposes."* Emphasis supplied.

R.C.M. 1947, section 84-601, provides that, "The board of county commissioners is the county board of equalization, and *must* meet on the third Monday of July in each year to examine the assessment book and equalize the assessment of property in the county. It must continue in session for that purpose from time to time until the business of equalization is disposed of, *but not later than the second Monday in August."* (Emphasis supplied.)

Here the board of county commissioners acted as a county board of equalization months after the time allowed by statute for so sitting and acting as a board of equalization, and long after its authority to so sit and act had been exhausted, finished and expired. The interpretation of section 84-601 was established by this court long ago in Matador Land & Cattle Co. v. County of Custer, 28 Mont. 286, 72 Pac. 662, in which this court said: "While boards of equalization are provided for in the constitution, their periods of life are prescribed by the Legislature, and they cannot hold for any other or longer period than the Legislature has fixed." See cases cited, and com-

pare Holly Sugar Corp., v. Board of Commissioners, D.C., 10 F. (2d) 506, and cases cited.

Our Constitution declares that its provisions are mandatory and prohibitory. Art. III, section 29. The action by resolution by the board of county commissioners of Flathead County of October 8, 1952, was and is wholly void, illegal and of no force or effect whatever; likewise the direction of the board of county commissioners, directing the county attorney to stipulate with the attorneys for the plaintiff Carlson, as trustee, to request the court to enter judgment against the county and state was and is wholly void and of no legality whatever. Such void act, understanding and agreement by public officials, void in its inception, is not validated by performance and remains a void act or agreement under the public policy established by the legislature. The legislature has enacted what is unlawful. "That is not lawful which is: 1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or, 3. Otherwise contrary to good morals." R.C.M. 1947, section 13-801. Actions taken or agreements made by a board of county commissioners in violation of the Constitution or statutes are contrary to public policy and absolutely and wholly void and of no legal effect. Compare Lebcher v. Board of Commissioners, 9 Mont. 315, 23 Pac. 713; State ex rel. Lambert v. Coad, 23 Mont. 131, 57 Pac. 1092; Missoula Street Railway Co. v. City of Missoula, 47 Mont. 85, 130 Pac. 771. A void act or agreement by a public official binds no one and is a mere nullity. 12 Am. Jur., Contracts, section 10, page 507; State ex rel. Helena Waterworks Co. v. City of Helena, 24 Mont. 521, 63 Pac. 99, 55 L.R.A. 336, 81 Am. St. Rep. 453.

The legislature has declared the law to be that, "Time does not confirm a void act." R.C.M. 1947, section 49-131. Compare State ex rel. Boorman v. State Board of Land Com'rs, 109 Mont. 127, 94 Pac. (2d) 201; Hames v. City of Polson, 123 Mont. 469, 215 Pac. (2d) 950; State ex rel. Brink v. McCracken, 91 Mont. 157, 163, 6 Pac. (2d) 869.

A stipulation or agreement founded on a void action or agree-

ment of public officers is void and of no force or effect and is a nullity. The resolution authorizing and directing the county attorney to enter into the stipulation being void, the stipulation so entered into was and is void, being against the law and public policy. What is unlawful, see section 13-801, supra. "Time does not confirm a void act," section 49-131, supra.

By the provisions of section 29, Article III of our Constitution, the people through their constitution have stated and it means that with reference to the subjects upon which the Constitution speaks, its declarations shall be conclusive upon the legislature, the executive and the judicial, and shall prevent any deviation therefrom by the executive, legislative and judiciary which has for its purpose the extension or limitation of authority, power or jurisdiction which the terms of the Constitution confer.

The statute, R.C.M. 1947, section 84-4502, provides that the plaintiff may bring an action, as in this case, after paying the first half of the 1950 tax under protest, but after said action is filed it must continue and the court must determine, as a matter of law, whether there was substantial evidence before the state board of equalization in justification of the valuations made. In other words, such an action challenges the sufficiency of the evidence to warrant the order of the board, and in determining the question thus presented, the court does not substitute its judgment for that of the state board of equalization, but merely determines, as a matter of law, whether the evidence presented to the state board of equalization is sufficient to sustain the order made. Mere overvaluation of the property, if shown, is not enough to overthrow the order of said board. The value of property is a matter of opinion. The taxpayer must be given an opportunity to produce proof of and argue his position, and the board must be allowed to demonstrate the reasons for and in support of its findings and order. Compare Johnson v. Johnson, 92 Mont. 512, 15 Pac. (2d) 842. This remedy is exclusive in the instant action.

We must, therefore, look to the provisions of the Constitution

and the statutes to determine what power the court had to enter its judgment of October 14, 1952, upon the stipulation of the attorneys for the plaintiff and the county attorney.

We find no law authorizing the court to so act. This action was brought under R.C.M. 1947, section 84-4502, supra, which requires the court to determine the matter in accordance with the facts presented. Johnson v. Johnson, supra. As was said by Chief Justice Brantly in Davidson v. Wampler, 29 Mont. 61, 74 Pac. 82, 85, "A judgment or decree which is void for want of jurisdiction at the time of its rendition is void for all time * * *. It is, in effect no judgment. No rights can be acquired under it. All acts performed under its authority and all claims founded upon it are void." Nowhere do we find any provision of law granting power to the court to enter such a judgment in such an action, either in express terms or by implication. It must follow, therefore, that the judgment of the district court was wholly unauthorized. Compare Alexander v. Windsor, 107 Mont. 152, 165, 166, 81 Pac. (2d) 685.

The state and its officers are bound by the Constitution and the statutes to protect the people, their fiscal and revenue laws, and for that purpose the attorney general, as the principal law officer of the state, has the power and authority to so act to protect the same. The court must likewise conform to the provisions of our Consttiution and the applicable statutes, or its judgment will be without binding force and effect.

In a somewhat similar case, County of Sacramento v. Central Pac. R. Co., 61 Cal. 250, the court said, "When, therefore, it appeared that the District Attorney, without consultation with the Attorney General, had accepted the offer of defendant to allow a judgment to be taken for less than the amount of taxes sued for, the Court below, upon the application of the Attorney General, should have permitted that officer to withdraw the acceptance, and should have set aside the judgment based upon it, together with the satisfaction thereof. * *

"* * * The District Attorney, by accepting an offer 'to allow a judgment' for less than the amount fixed by the State

Board, could not estop the State from claiming such amount. The rule of presumption as to the authority of an attorney has no application to a public officer whose powers and duties are defined by law, and therefore exactly understood by all parties concerned. As was said by the Supreme Court of Nevada: 'To presume that he (the district attorney) has a special authority to compromise a claim for delinquent taxes is to presume a fact which is legally impossible.' (State v. Cal[ifornia] Min. Company, 15 Nev. [234], 251.)'' Emphasis supplied.

While the county attorney, in his official capacity, subject to the supervision of the attorney general, is authorized to prosecute and defend actions on behalf of the state and county, in the name of the county, for the amounts of taxes due the state and county, the court was bound to know the extent of the powers of the county attorney and the board of county commissioners with respect to these tax matters. When the valuations and percentage basis have been found and determined by the state board of equalization, as here, the county, so far at least as the state tax is concerned, is but the nominal party to the suit. As to such tax, the State of Montana is the real party in interest. It is the state which is in the action suing to protect its interest.

This action is a special, exclusive, statutory remedy and proceeding. In such instances we look to see whether the Constitution has been violated and that the court followed the provisions of the statute. In respect to the facts in this case, the board of county commissioners had no control of or over the litigation whatever. The consent of the county attorney to the entry of judgment was void and the judgment is necessarily just as erroneous with his consent as it would have been without it. For a full discussion of what could happen in the collection of taxes if the county attorney had such authority, see State of Nevada v. California Min. Co., 15 Nev. 234; and see State v. Allen, 32 Tex. 273.

The action and resolution of the board of county commission- of October 8, 1952, being without authority of law and

in direct conflict therewith and wholly void and the stipulation of the county attorney and the attorneys for plaintiff Laurence S. Carlson, as trustee in liquidation of Alex Shulman Company, being without authority of law and in conflict with the Constitution and statutes, are void and of no effect. The judgment of the court of October 14, 1952, being founded on the illegal act and agreement of the board of county commissioners of Flathead County, and the unauthorized and illegal act and stipulation of the county attorney, being without authority of law, is therefore erroneous and of no force or effect. Therefore the said judgment so entered and filed herein on October 14, 1952, is hereby reversed and set aside as erroneous, and the satisfaction of said judgment as of the 15th day of October 1952, is hereby set aside. The order dated April 10, 1953, and filed in said cause April 13, 1953, is hereby set aside and vacated.

It is further ordered that the complaint in intervention filed by the State of Montana and the state board of equalization be reinstated as provided in our opinion in Appeal No. 9262, 293 Pac. (2d) 273; that the court as soon as possible proceed with the action in accordance with the provisions of the Constitution, the applicable statutes and the directions herein.

MR. CHIEF JUSTICE ADAIR: concurs.

MR. JUSTICE ANDERSON: (concurring).

I agree only with the result reached in the foregoing opinion. However, I fail to see how the judge below is to proceed upon the merits without some comment from us as to what he should do.

MR. JUSTICE ANGSTMAN: (dissenting).

In stating the reasons for my disagreement with the opinion written by Mr. Justice Bottomly I first desire to point out a misstatement contained in the second paragraph of that opinion wherein it is said, "The State of Montana and the state board of equalization here appeal from the judgment entered

against them in the district court of Flathead County on October 14, 1952.''

Neither the State of Montana nor the state board of equalization was a party to the action. No judgment was entered against either of them. They were strangers to the action.

Plaintiff filed a motion to dismiss the attempted appeal. One of the grounds of the motion was that neither the State of Montana nor the state board of equalization was a party to the action in the district court nor were they interveners at the time the judgment was entered and hence neither of them was entitled to take an appeal. The propriety of this motion is not discussed in the opinion of Mr. Justice Bottomly. I think this motion must be sustained.

Under our statutes only parties to an action may take an appeal. R.C.M. 1947, section 93-8002. In 39 Am. Jur., Parties, section 55, page 928, it is said: ''Persons who are not parties of record to a suit have no standing therein which will enable them to take part in or control the proceedings.''

In 4 C.J.S., Appeal and Error, section 186, page 364, the author states: ''As a rule one whose application to intervene, or to be admitted as a party defendant, in a suit has been rejected by the court cannot appeal from the final judgment rendered in the suit.'' Among other cases cited in support of the text is that of State ex rel. Red Lodge-Rosebud Irr. Dist. v. District Court, 75 Mont. 132, 242 Pac. 431.

Here the application of the State of Montana and the state board of equalization to intervene had been rejected by the court by the striking of their complaint in intervention.

Likewise on the assumption that the appeal is properly before us I do not agree with the opinion of Mr. Justice Bottomly.

Neither the action of the board of county commissioners in entering into the stipulation in question, nor the judgment of the court runs counter to section 39, Article V, or section 6 of Article XII of the Montana Constitution. Section 39, so far as material here, declares that no obligation or liability held or owned by the state shall be remitted, released, postponed or in

any way diminished by the legislative assembly, nor shall it be extinguished, except by payment into the proper treasury, and section 6 of Article XII prohibits the release or discharge of property from its proportionate share of state taxes. These sections of the Constitution have reference to obligations, liabilities and taxes that have been fixed and determined in amount and not such as are involved in pending litigation to determine the amount. City of Louisville v. Louisville Ry. Co., 111 Ky. 1, 63 S.W. 14 and State ex rel. Wilson v. Young, 44 Wyo. 6, 7 Pac. (2d) 216, 81 A.L.R. 114.

The case of State of Nevada v. California Min. Co., 15 Nev. 234, so strongly relied on in the opinion of Mr. Justice Bottomly, is wholly different from this case. There the tax obligation had become fixed and determined. The tax was delinquent. The time had passed to obtain any relief from the tax. Here the taxpayer was pursuing the very remedy pointed out to it by this court in State ex rel. Goza v. District Court, 125 Mont. 296, 234 Pac. (2d) 463 to question the amount of the tax.

To now say that plaintiff cannot pursue the remedy which this court held was available to it is to, in effect, overrule that case and to repeal the statute, section 84-4502.

The opinion of Mr. Justice Bottomly likewise is in error in holding that the board of county commissioners in authorizing the compromise of the action attempted to act as a board of equalization. The board acted as a board of county commissioners. It was considering a claim against the county. The county's interest was vastly superior to that of the state. The authority of the board is found in R.C.M. 1947, section 16-1017, which gives it ''jurisdiction and power under such limitations and restrictions as are prescribed by law: To direct and control the prosecution and defense of all suits to which the county is a party.''

The board in this case acted not as a board of equalization but as the executive board of the county with powers expressly conferred upon it by statute. Morse v. Granite County, 44 Mont. 78, 119 Pac. 286; State ex rel. School District No. 4 v. McGraw,

74 Mont. 152, 240 Pac. 812; Weir v. Silver Bow County, 113 Mont. 237, 124 Pac. (2d) 1003. Cases are legion that the board of county commissioners has authority to compromise claims against the county. They are listed in the annotations in 105 A.L.R. 170 and 15 A.L.R. (2d) 1362.

Likewise the suggestion made in the opinion of Mr. Justice Bottomly that the result reached by the court would have been proper had the court heard evidence but that the court could not act on the stipulation is unsound. The stipulation was presented to and considered by the court and nothing further could have been added by oral testimony. There was full compliance with R.C.M. 1947, section 84-403.

The court had before it a complaint charging that the property in question consisted of discarded machinery and equipment which had formerly been used by the Somers Lumber Company in saw mill operations; that those operations had been entirely discontinued; that the property was purchased as salvage and has no value except as salvage and "must be dismantled and removed from said premises within a year from the date of purchase." The complaint further charged that upon competitive bidding, after advertising the property for sale pursuant to newspaper advertisements published widely along the line of the Great Northern Railway Company, plaintiff's bid of $80,000 was the highest and best bid offered for the property; that instead of assessing the property at a valuation of $80,000, which was the full cash value thereof, the assessor assessed it at a value of $334,260, which was alleged to be unconscionably excessive; that this assessment was reduced by the state board of equalization to the sum of $277,551; the complaint alleges that the order of the state board fixing the value at $277,551 was unlawful and arbitrary.

This court in the Goza case, supra, reaffirmed the holding in Johnson v. Johnson, 92 Mont. 512, 15 Pac. (2d) 842; International Business Machine Corp. v. Lewis and Clark County, 111 Mont. 384, 112 Pac. (2d) 477, and Corcoran v. State Board of Equalization, 116 Mont. 499, 154 Pac. (2d) 795, to the effect

that the courts will interfere with an overvaluation placed upon property for assessment purposes when the overvaluation is so gross as to be inconsistent with any exercise of honest judgment. The majority opinion in the Goza case, with which this writer disagreed, expressly overruled the Corcoran case but only so far as it sanctioned remedy by mandamus. The county commissioners did not abuse their discretion as executive officers of the county in concluding that an assessment of property for three and one-half times the value placed upon it by bidders at a duly advertised sale was so grossly excessive as to preclude the exercise of honest judgment and discretion. Grays Harbor Const. Co. v. Grays Harbor County, 99 Wash. 184, 168 Pac. 1138 (cited with approval in the Corcoran case), and the fact that this discretion was exercised and declared by stipulation rather than by testimony is immaterial.

The real difficulty with this case is that both the board of county commissioners and the district court were confronted with contradictory statements in the Goza case which could not both be followed.

The majority opinion in that case states [125 Mont. 296, 234 Pac. (2d) 465], "An action brought under R.C.M. 1947, section 84-4502, was intended to permit recovery of any tax *or part thereof* which could not be lawfully exacted, *and, in effect, is a proceeding to review the decisions of the county and state boards of equalization.*" Italics supplied.

From that language the court was fully warranted in believing that it could direct recovery of that part of the tax which it found to be excessive. However in another part of its opinion in the Goza case the court stated that the "court will not substitute its judgment for that of the taxing officials and an over-valuation, honestly made, will not be disturbed. * * * Otherwise the court would be converted into an assessing board and would be usurping powers lodged in the executive branch of the state government by the legislative department."

The court could not award recovery of part of the tax nor review the decisions of the county and state boards of equaliza-

tion without first finding the actual value of the property for assessment purposes and this of necessity would require it to resolve itself into an assessing board contrary to the cases cited in the Goza case. The writer of this opinion in dissenting from the majority opinion in the Goza case stated: "It cannot be said that section 2269 [now R.C.M. 1947, section 84-4502] affords a remedy unless the court has the right to fix the value of the property in case it finds it has been overvalued. But this would make of the court an assessing tribunal which it repeatedly has asserted may not be done."

What the court should have done here, if satisfied that the assessment was arbitrary, or constructively fraudulent, as it had the right to conclude from the stipulation, was to refund the entire tax. The state board could then cause the property to be assessed as omitted property under R.C.M. 1947, section 84-711. But as before stated, neither the state board of equalization nor the State of Montana has a right to appeal from the judgment in question. Neither of them was a party to the action. If they can perfect an appeal because of a financial interest—here that interest being about $200—then any school district in the county may do likewise. Our statutes do not permit this to be done. Whether any remedy exists for attacking the judgment at this time I express no opinion. Certainly an attempted appeal by a stranger to the proceedings does not lie.

I think the motion to dismiss the attempted appeal should be granted. But treating the appeal on the merits I would say that the judgment should be modified so as to allow plaintiff to recover all of the amount sued for with the right of reassessment as above indicated.

Then again if the state may question the validity of the judgment it can do so only to the extent of its interest therein which is the sum of about $200. As to about 95% of the judgment the state and the state board of equalization have no interest whatsoever. Cases are legion that one who is not injured or adversely affected by an act may not complain of it as being unconstitutional: Holt v. Custer County, 75 Mont. 328, 243 Pac.

811; State v. Vettere, 77 Mont. 66, 249 Pac. 666; State ex rel. City of Wolf Point v. McFarlan, 78 Mont. 156, 252 Pac. 805; Durocher v. Myers, 84 Mont. 225, 274 Pac. 1062; State ex rel. Brooks v. Cook, 84 Mont. 478, 276 Pac. 958; Merchants' National Bank v. Dawson County, 93 Mont. 310, 19 Pac. (2d) 892; Pierson v. Hendricksen, 98 Mont. 244, 38 Pac. (2d) 991; Thompson v. Tobacco Root, etc., Co., 121 Mont. 445, 193 Pac. (2d) 811.

Furthermore since the cause is being remanded for further proceedings the court ought to point out which of the contradictory rulings set forth in the Goza case should be followed by the court. It is not too late to declare the rule of law which the lower court should follow in the further proceedings. State v. Hale, Mont., 291 Pac. (2d) 229.

It should be noted that the opinions herein furnish no guide for the lower court to follow. It is only in the result of Justice Bottomly's opinion that a majority of the justices agree.

It seems to me that this court ought not direct the taxpayer here to follow one blind alley after another only to strike a dead end when the cause reaches this court.

MR. JUSTICE DAVIS:

I concur in the foregoing dissenting opinion of Mr. Justice Angstman.

On Petition for Rehearing

It is ordered that nothing in the opinion promulgated herein on the 22nd day of December, 1955, shall be construed as denying the district court, upon a trial of the issues, the right and duty to inquire whether the assessment challenged by plaintiff was fraudulently or arbitrarily made in disregard of the applicable statutes and the facts, and should the district court so find it shall have the right to set aside that assessment and permit a recovery of the tax consistent with what was said in State ex rel. Goza v. District Court, 125 Mont. 296, 234 Pac. (2d) 463.

It is further ordered that respondents' petition for rehearing be and it is denied.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES BOTTOMLY and ANDERSON, concur.